43  287
44  507
___
43  287
62  162

HENRY RISSE v. MORITZ GASCH ET AL.

FILED JANUARY 3, 1895.    No. 5127.

1. **A new trial** is a statutory remedy, and can be granted by a court of law only upon the grounds, or some of them, provided for by the statute.

2. **Review.** An assignment, "Errors of law occurring at the trial," is sufficient, in a motion for a new trial, to enable the district court to determine whether it erred in admitting or rejecting evidence; but under such an assignment in a petition in error the supreme court cannot review anything.

3. ———: VERDICT: CONCLUSIVENESS. The supreme court is not invested with authority by the constitution or laws of the state to set aside the verdict of a jury, having for its support sufficient competent evidence, even though this court may be of opinion that had it been the triers of the case, it would have reached a different conclusion.

4. **Trial by Jury.** To have disputed questions of fact, put at issue in actions at law, tried and determined by a jury is one of the rights guarantied by the constitution of the state to its citizens.

5. **The evidence** examined, and *held* to support the finding of the jury that "The instrument introduced in evidence in controversy is not the last will and testament of Carl Julius Gasch, deceased."

ERROR from the district court of Adams county. Tried below before GASLIN, J.

*M. A. & J. C. Hartigan,* for plaintiff in error.

*Capps & Stevens, contra.*

RAGAN, C.

Henry Risse filed, or caused to be filed, in the county court of Adams county a writing purporting to be the last will and testament of Carl Julius Gasch, deceased, and prayed that said writing might by said court be proved and adjudged the last will and testament of said deceased. The widow and only heir, a son, of Carl Julius Gasch, deceased, appeared in the county court and objected to the paper filed by Risse being approved and adjudged to be the last will and testament of the deceased, on the ground that it was in fact not his will, that he had never signed it. The county court admitted the paper filed to probate as the will of the deceased, and the widow and heir appealed to

the district court, where the issue, whether the paper purporting to be the last will and testament of Carl Julius Gasch, deceased, had ever been executed by him, was tried to a jury, which rendered a verdict that "We find the instrument introduced in evidence in controversy is not the last will and testament of Carl Julius Gasch, deceased;" and Risse brings the judgment pronounced on that verdict here for review, and assigns the following errors:

.1. The first assignment of error is in the following language: "That the court erred in the admission of testimony offered by the respondent, and duly excepted to by the plaintiff and proponent when the same was offered." This assignment is too indefinite for consideration. The plaintiff in error at the trial made many objections to the evidence introduced by the defendants in error, and we are unable to determine from this assignment at what particular evidence offered or given by the defendants in error it is aimed.

2. The second and third assignments are: "That the court erred in giving of instructions requested by the defendants, and the court erred in refusing to give instructions asked by the plaintiff." These assignments, and each of them, are too indefinite for review. It has been so many times decided by this court that a general objection to the ruling of a district court in giving instructions or refusing instructions cannot be considered, that it is unnecessary to do more than call attention to the rule.

3. The fourth and fifth assignments are, that the verdict is not sustained by the evidence and the judgment is contrary to the law of the case. The judgment is not contrary to the law of the case if the verdict is sustained by sufficient competent evidence, and that we will consider later.

4. The sixth assignment is: "That the verdict was given under the impulse and under the influence of passion and sympathy rather than under the law and evidence of the case." Assuming that the assignment is true as a matter

23

of fact, and that the verdict of the jury was the result of
impulse and passion and sympathy, the record contains no
proof of it; and we know of no law which would permit
a district court or this court to grant a litigant a new trial
because it believed the jury, under the impulse and influ-
ence of passion and sympathy, had returned a verdict
against him. A new trial is a statutory remedy and can
be granted by a court of law only upon the grounds, or
some of them, provided for by the statute.

5. The seventh assignment is: "That the verdict should
have been for the plaintiff instead of for the respondents."
This is included in the assignment that the verdict is not
supported by the evidence.

6. The eighth assignment is: "That there were errors
at law occurring at the trial, and which were duly excepted
to by the plaintiff, which in themselves were a sufficient
cause for a new trial. The court erred in refusing to grant
the plaintiff's motion for a new trial." The assignment,
"Errors of law occurring at the trial," is sufficient in a mo-
tion for a new trial to enable the district court to determine
whether it erred in admitting or rejecting evidence, but
under such an assignment in a petition in error this court
cannot review anything; and the court did not err in over-
ruling the motion of Risse for a new trial if the verdict of
the jury is supported by the evidence.

7. The only assignment of error urged here by counsel
for the plaintiff in error which we are permitted under the
law and the decisions of this court to examine is the one that
the verdict is unsupported by the evidence. The only
issue in the case was whether the paper proposed for pro-
bate, and alleged to be the last will and testament of Carl
Julius Gasch, deceased, was in fact his last will and testa-
ment; that is, whether he signed such paper. To prove
that he did, plaintiff in error called as a witness one Enk-
ing, who testified that on the 15th day of June, 1875, he
was a real estate agent and broker residing in the city of

Fond du Lac, Wisconsin, and that on that day Carl Julius
Gasch, in his presence, signed his name to the paper
offered in evidence in this controversy, and declared it to be
his last will and testament; that he, Enking, drew said
will at the request of Carl Julius Gasch; that Charles
Ferdinand Gasch, a brother of Carl Julius Gasch, was pres-
ent when the latter signed his name to the paper as his will
and witnessed the same, and that one Liebemann was also
present and saw Carl Julius Gasch sign his name to the
paper alleged to be his will and signed it as a witness.

Charles Ferdinand Gasch testified that he was a brother
of Carl Julius Gasch, deceased; that the paper in contro-
versey was signed by Carl Julius Gasch June 15, 1875,
in the office of Enking, in Fond du Lac, Wisconsin; that
he saw Carl Julius Gasch sign said paper, and that he,
Charles Ferdinand Gasch, at the request of Carl Julius
Gasch, witnessed his signature to it; that the signature,
Carl Julius Gasch, on the paper in controversy was the sig-
nature of his brother, Carl Julius Gasch.

Charles Liebemann testified that the signature of one of
the witnesses on the paper alleged to be the last will and
testament of Carl Julius Gasch was his, Liebemann's.

The defendants in error, to sustain their contention that
the signature on the paper alleged to be the last will and
testament of Carl Julius Gasch was not his signature nor
his handwriting and therefore not his will, produced the
following evidence:

The widow testified that she was married to Carl Julius
Gasch, deceased, in Germany; that in 1847 they immi-
grated to the United States and soon thereafter bought and
settled on a farm some twenty miles northeast of the city
of Sheboygan, in Sheboygan county, Wisconsin; that she
and her husband and their son, Morris Gasch, lived to-
gether on said farm prior to and some time after and dur-
ing the entire year of 1875; that they lived peaceably and
happily together; that her husband, Carl Julius Gasch,

transacted his business at Sheboygan, the county seat of his
own county, going there frequently in the morning and re-
turning in the evening; and that he was not in the city of
Fond du Lac at any time during the year 1875, and that
the only time he was in the city of Fond du Lac during
the time they lived in the state of Wisconsin was in 1861,
at the time the son enlisted in the United States army;
that her husband's brother, Charles Ferdinand Gasch, who
testified to signing as a witness the paper claimed to be the
will of her husband, came to the United States from Ger-
many the same year that she and her husband came, but
that they did not come together, and that her husband and
his brother never met after they left Germany until about
Christmas of 1870; that until that time her husband did
not know where said brother was; that about that time the
brother came to the home of the witness and desired the
witness' husband to mortgage his farm and furnish the
brother some money; that the witness objected to this;
that it was not done, and as a result the brothers had
trouble; that the brother was at the house of witness and
her husband about two years after that, and at that time
wished her husband to furnish him money, which was not
done, and the brothers again had trouble, that no visits
were interchanged between the brothers or their families,
although from 1870 until long after 1875 the brother re-
sided in Calumet county, some forty miles from where the
witness resided; that her husband always signed his name
Julius Gasch; that the signature on the paper claimed to
be the will of her husband was not his signature, nor his
handwriting; that her husband in his last sickness ex-
pressed a desire to make a will and said to a neighbor who
was present that he, the deceased, had no will; that from
the time she and her husband settled in Adams county,
Nebraska, the spring of 1884, until her husband's death,
which occurred in 1888, no letters or communications
passed between the brothers or their families.

Morris Gasch, the son and only heir of Carl Julius Gasch, testified that he enlisted in the army in 1861 and served nine months; that he enlisted at the city of Fond du Lac, Wisconsin, and that his father was present at the time; that his father was never in Fond du Lac at any other time to the knowledge of the witness; that he was married in 1870 in Wisconsin and lived with his father and mother on the father's farm prior to and subsequent to the year 1875 and during the entire year of 1875; that he rented his father's farm; that he and his wife and the father and mother all lived on the farm; and that his father was not in the city of Fond du Lac, Wisconsin, during the year 1875. He also testified about the two visits made by his uncle, Charles Ferdinand Gasch, to his father's house, and about the trouble between the two brothers, substantially the same as testified by his mother; that his father usually transacted his business while he lived in Wisconsin at the county seat town of Sheboygan; that he signed his name Julius Gasch; that the witness was well acquainted with the handwriting of his father, and that the handwriting and signature on the paper claimed to be his father's will was not his father's handwriting or signature.

Other witnesses testified to their acquaintance with Carl Julius Gasch while he lived in Wisconsin, and that he was there known by the name of Julius Gasch and that he signed his name Julius Gasch.

A justice of the peace of Wisconsin testified that he, by virtue of his official position, had had occasion to take the acknowledgments of papers signed by the deceased, and to those papers he signed his name Julius Gasch. A distillery bond was also put in evidence, on which the deceased was surety. This bond was executed in the state of Wisconsin, and the name of the deceased was signed thereon Julius Gasch. The deed made to the deceased for the farm he bought in Wisconsin was put in evidence, and in that the deceased was described as Julius Gasch; and the deed he made

to the purchaser of his farm when he sold out and moved to Nebraska was put in evidence, and that was signed and acknowledged Julius Gasch. Various deeds, leases, coupons, and papers bearing the admittedly genuine signature of the deceased, signed Julius Gasch, and signed by him after he came to Nebraska, were also put in evidence.

On cross-examination of Liebemann, whose named appeared signed to the paper purporting to be the will of the deceased, he stated that he did not remember the circumstance of having signed his name to the paper; that he could not say that he ever knew the deceased, and that the only thing he was sure of was that the signature was his, and that he signed it at the request of some one.

It also appeared from the cross-examination of Charles Ferdinand Gasch that on June 15, 1875, he lived in Calumet county, Wisconsin, some forty miles from where the deceased lived, and that about that time the deceased came to his, Charles Ferdinand Gasch's, home and he and his brother went to the city of Fond du Lac, as the deceased expressed a wish to buy a horse, and they went there for that purpose, and it was at that time that the will was made. By the terms of the will all the property of the deceased, except one hundred dollars a year to the widow during her life, and one hundred dollars in cash to the only heir, the son, was devised to the children of Charles Ferdinand Gasch. He testified to no reason assigned by the deceased as to why the deceased was thus disinheriting his wife and child; nor does he testify to any consultation between himself and the deceased as to the intentions of the deceased to make the will prior to the date of its execution; nor does he testify as to whether the deceased bought a horse at that time.

One Bigelow, a neighbor of the deceased, who was present at his last sickness, testified that the deceased expressed a desire to make a will stating that he had none.

In all of the papers introduced in evidence on the trial

bearing the admittedly genuine signature of the deceased his name was signed Julius Gasch in English; and there is no evidence whatever in the record that he was ever known at any time or place to sign his name Carl Julius Gasch either in English or German, except the German signature to the paper alleged to be his will.

Enking, in his cross-examination, admitted that he was not well acquainted with the deceased; that he had seen him only once or twice prior to the time of the execution of the paper claimed to be his will.

The foregoing is not all the evidence introduced by the parties, but it may fairly be said to be the substance of it; and now we are asked to say that this evidence does not support the finding of the jury. Had we been the jury we might have reached a different conclusion, but how can we say that the conclusion reached by the jury under this evidence is the wrong one? Or, rather, how can we say that the jury's conclusion is unsupported by sufficient competent evidence? We did not see nor hear the witnesses testify. We had no opportunity of observing their demeanor while upon the stand. So far as their evidence is concerned we have before us but the lifeless record in which the testimony of one witness, if consistent with itself, weighs just as much as the testimony of another. Except the signature in writing attached to the paper alleged to be the will of the deceased, and which is in German characters, we have never seen any signature or handwriting of the deceased. The jury had before it numerous papers on which the handwriting and signature of the deceased appeared, and which handwriting and signature were indisputably genuine. The jury had an opportunity to compare the admittedly genuine handwriting of the deceased with that alleged to be his on the paper alleged to be his will. We have not even that opportunity. The original papers bearing the genuine handwriting and signature of the deceased introduced in evidence on the trial have not been brought

here for our inspection. We have before us type-written copies of them. That some one appeared before Enking and signed the paper in evidence Carl Julius Gasch in German and represented himself to be that person and published this paper to be his last will and testament we think is highly probable; but was that person Carl Julius Gasch, or Julius Gasch, the man who died in Adams county in 1888? We do not know. The jury said in effect by their verdict that the person who signed the paper was not the identical Carl Julius Gasch, or Julius Gasch, who died in Adams county in 1888, and whose widow and son are the defendants in error here; and as that finding is not unsupported by sufficient competent evidence, we are not at liberty to disturb it.

Twelve jurors, wholly disinterested in the results of this case, have said on their oaths that the signature to the paper in controversy was not the signature of Carl Julius Gasch, who died in Adams county in 1888, and that he was not present in Fond du Lac, Wisconsin, on the 15th of June, 1875. This court is not invested with authority by the constitution or laws of this state to set aside this finding, if it has for its support competent evidence, even though we might be of opinion that had we been the triers of the case we would have reached a different conclusion. To have disputed questions of fact put at issue in actions at law tried and determined by a jury is one of the rights guarantied by the constitution of the state to its citizens. But another thought occurs in this connection. This trial was presided over by a learned judge who had had sixteen years of experience as a judge. During that time there had probably been tried before him a thousand jury cases. He heard this testimony; he saw these witnesses testify; he observed their demeanor upon the stand; and he has, by overruling the motion of the plaintiff in error for a new trial, stamped upon this finding the seal of his approval. The verdict of the jury, then, fortified as it is by the evi-

dence, by the oaths of the jurors, and by the approval of the trial judge, binds and concludes this court, and the judgment of the district court must therefore be and is

AFFIRMED.