**MILLS et al. v. MILLS.    (No. 201–327I.)**

(Commission of Appeals of Texas, Section B. March 16, 1921.)

1. **Wills** ⬅➾324(4)—**Execution of will held question for jury.**

Whether deceased had in fact executed the will offered for probate *held* for the jury.

2. **Trial** ⬅➾140(2)—**Credibility of uncontradicted testimony of interested party for jury.**

No matter how positive and uncontradicted the testimony of an interested party may be, the question of his credibility must be submitted to the jury.

3. **Appeal and error** ⬅➾1177(9)—**Incomplete statement of facts requires court to remand case.**

Where the statement of facts is obviously incomplete and does not contain important parts of the evidence, the Court of Civil Appeals, on reversing judgment of lower court, will not render judgment for adverse party, but will remand the case for another trial.

4. **Appeal and error** ⬅➾1175(5)—**No judgment to be rendered on reversal, unless district court under evidence should have directed verdict.**

The Court of Civil Appeals in reversing a case should not render judgment, unless the evidence was of such character that the district court should have directed a verdict.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Proceedings by J. H. T. Mills against Marshall Mills and others to probate the will of Ella Mills, deceased. Judgment denying probate reversed by Court of Civil Appeals (206 S. W. 100), and judgment rendered, directing probate of the will, and contestants bring error. Judgment of Court of Civil Appeals reversed, and case remanded.

Shurtleff & Cummings, of Breckenridge, and Chas. L. Black, of Austin, for plaintiffs in error.

Wear & Frazier and J. E. Clarke, all of Hillsboro, for defendant in error.

### Statement of the Case.

KITTRELL, J. The Court of Civil Appeals of the Fifth Supreme Judicial District reversed a judgment of the district court of Hill county, denying probate of an alleged will of Ella Mills, who died April 30, 1915. The judgment so denying probate was rendered pursuant to the finding of a jury that the decedent did not execute the instrument.

The Court of Civil Appeals also rendered judgment directing probate of the will, and stated its conclusion as follows:

"The trial court should have instructed a verdict in favor of appellant, and upon such a verdict should have entered judgment probating the will."

The contentions of the respective parties before us are as follows: The plaintiff in error contends that if the Court of Civil Appeals was not willing to approve the verdict, it should have remanded the case, and a rendition was an unwarranted exercise of power.

Defendant in error contends that, one subscribing witness having testified that he and the other subscribing witness, who was dead at the time of the trial, witnessed the will at the request of the decedent, and in her presence, and in the presence of each other, and a cashier in a bank having testified that the signature of the decedent to the instrument was genuine in his "opinion," and there being no evidence of any witness on the stand to the contrary, the testimony was uncontradicted, undisputed, and unimpeached, and there was no room for reasonable minds to differ; hence the jury had no right to find against the will.

### Opinion.

The evidence condensed in the least possible space consistent with clearness was:

That a will was found a few days after the death of the decedent by which she left all her property to one of the contestants, her sister, Mrs. Frame.

That J. H. T. Mills, defendant in error, and substantially the only beneficiary under the instrument offered for probate, took the first will found, and kept it for about 10 months, and when asked to return it said it was lost or misplaced, but after he had found the instrument offered for probate produced the first will, which he never attempted to probate. That will was dated in 1907.

---

⬅➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

That several months after the death of Ella Mills he showed yet another will in coarser writing than was the one offered for probate, and with a bicycle heading on it. That will was never seen again. It was dated January 5, 1912. When proponent showed the witness the will he asked her when Mrs. Frame was married. She was married October 10, 1912.

That proponent 'claimed to have found the instrument offered for probate in a drawer in a desk in his room, in which drawer he had never looked since his sister died about 10 months before. He took all her papers and carried them to his room, but did not look through them particularly, and did not put them or the instrument offered in the drawer, but his sister had access to the drawer, and was in the house about two weeks before her death. All the testimony above set forth is undisputed.

The subscribing witness, one Sharbut, testified that he and one D. C. Shelton signed the will in the presence of the decedent, and saw her sign it, and that she requested him and Shelton to sign it; that it was signed in the shop of proponent and his brother, who were about 20 feet away, on October 24, 1912, but he never at any time told either of the Mills brothers about it, or anybody else, though he saw them every day or two, and heard they were having trouble over the property.

The bank cashier, Scott, had seen a number of checks passing through his bank signed Ella Mills, and had had about 10 years' experience in the bank in Hubbard, but Ella Mills did not keep her account in his bank. He had taken no course in study of handwriting, and had no work on the subject, but was of the "opinion" that the will was signed by the same party who signed three vendor's lien notes which bore the admittedly genuine signature of Ella Mills, and the same party who signed two checks bearing the admittedly genuine signature of Ella Mills, and was of the "opinion" that the signature of D. C. Shelton was the same as appeared on five checks which admittedly bore the genuine signature of Shelton. Sharbut clerked in a grocery store, and had seen Ella Mills draw a check every three or four months.

Proponent testified the will was signed by his sister, and one Elkin testified that Ella Mills showed him a will some time in the latter part of 1912, which was witnessed by Sharbut and Shelton. There was a marked contradiction in the testimony of Sharbut in the county court and in the district court as to his knowledge of the contents of the will.

[1, 2] In view of this testimony we are of the opinion that the district court would have had no right to take the case from the jury, and that the Court of Civil Appeals erred in so directing. It is settled law in Texas that it matters not how positive and uncontradicted the testimony of an interested party

may be, the question of his credibility must be submitted to the jury.

It was so held in Sonnentheil v. Brewing Co., 172 U. S. 401, 19 Sup. Ct. 233, 43 L. Ed. 492 (a Texas case), and the holding was followed in Burleson v. Tinnin (Civ. App.) 100 S. W. 350 (writ of error refused). The authorities being in conflict on the question, the Sonnentheil Case was followed.

To have directed a verdict in favor of probate would have been equivalent to telling the jury the evidence was true, or at least there was no doubt cast upon it. This the court had no right to do. Turner v. Grobe, 24 Tex. Civ. App. 554, 59 S. W. 585.

In that case the plaintiff testified in his own behalf, and was uncontradicted, but the court said the truth of his statement should have been submitted to the jury, and the court was in error in assuming his evidence was true.

The case of Cheatham v. Riddle, 12 Tex. 112, states the rule as it prevails in Texas:

"The jury are not required to believe a witness, although he make a plain statement of what is not impossible, and is neither impeached nor contradicted, but may discredit him on account of the manner of giving the testimony, the attendant circumstances, * * * and the unnaturalness and improbability of the statement; and this, too, it seems, where the witness is a witness of the party against which the statement militates."

That case has been cited in Stitzle v. Evans, 74 Tex. 596, 12 S. W. 326, and many other cases, and is cited as late as Brannan v. First State Bank (Civ. App.) 211 S. W. 946, and in 40 Cyc. 2586.

The following cases are to the same effect: Railway v. Johnson, 23 Tex. Civ. App. 319, 55 S. W. 791, and Gonzales v. Adoue (Civ. App.) 56 S. W. 543.

That the testimony of attesting witnesses may be impeached wholly by circumstances is held in the following: Baird v. Shaffer, 101 Kan. 585, 168 Pac. 836, L. R. A. 1918D, 638; In re McDermott's Estate, 148 Cal. 43, 82 Pac. 842, and Risse v. Gasch, 43 Neb. 287, 61 N. W. 616.

In the first-named case there were three attesting witnesses who testified, and in each of the other cases two, and in all of the cases their testimony was attacked wholly by circumstances, and in each case the issue was virtually identical with that submitted in the instant case, and the verdict was against the will in each case, and the judgment was affirmed.

In addition to the testimony about two other wills besides the instrument offered for probate, we will state other reasons why the case should have gone to the jury.

First. Proponent testified to his sister's signature, and the jury had the right to disregard his evidence.

Second. It is evident the first will was before the jury, and they may have conclud-

ed that it was not signed by the same person who wrote the instrument offered for probate.

Third. The testimony of Sharbut was undoubtedly most remarkable, if not improbable, and the jury may have detected that in his manner of testifying, and that of the witness Elkin, which could not be interpreted in written form to any court, but which led the jury to disbelieve what they said.

Fourth. If it be conceded that Scott, the cashier, was an expert in handwriting, which the testimony by no means shows, his testimony in the last analysis was but his "opinion," and the jury had all the papers and signatures before them, and were not obliged to accept as correct Scott's testimony. They may have been as competent as he to decide the question of fact.

Fifth. The notes were signed Ella D. Mills, while the instrument offered for probate was signed Ella Mills.

Sixth. Three of the checks signed by Shelton were written in pencil and two in ink. In the first the D and C were connected by a loop, while in the two written in ink the distance between the D and C is unusually great, and there is a distinct comma between the D and the C, while between the D and C in the signature written in ink to the instrument offered for probate there is no comma between the D and C, and the signature is only about less than half the length of that on the drafts written in ink.

These were all facts which the jury had the right to consider.

We think the deduction of counsel for plaintiff in error that the will of 1907 and the instrument offered for probate were practically identical, except the name of the devisee, is fair and reasonable, because both wills were before the jury, and the proponent testified that the first will left "all her property" to Mrs. Frame, and the instrument offered for probate left it all to him; so there could have been but little, if any, room for difference in phraseology.

[3] The statement of facts is obviously incomplete, and does not contain all the evidence offered, most important parts being omitted, and under such circumstances a remand of the case for another trial is justified, if not demanded, by the following authorities: Allen v. Anderson (Civ. App.) 96 S. W. 54; Davis v. Adams, 61 Tex. Civ. App. 223, 129 S. W. 150; W. O. W. v. Hipp (Civ. App.) 147 S. W. 316.

[4] The Court of Civil Appeals in reversing a case should not render judgment unless the evidence was of such character as that the district court should have directed a verdict. Mitchum v. Railway Co., 107 Tex. 34, 173 S. W. 878.

The case of Rounds v. Coleman (Civ. App.) 189 S. W. 1086, was a much stronger case for the appellee than was this case for appellant, yet the judgment directing a verdict was reversed, and the cause remanded.

We do not mean to be understood as expressing, or even intimating, our opinion as to what the verdict should have been, or what the trial court should have done. We simply hold that the Court of Civil Appeals should not have rendered judgment directing probate of the will.

We therefore recommend that its judgment be reversed, and judgment be here rendered, directing the case to be remanded to the district court of Hill county for another trial.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.