## BROADDUS v. LONG.

### No. 4974.

Court of Civil Appeals of Texas. Amarillo.

Jan. 16, 1939.

Rehearing Denied Feb. 20, 1939.

E. T. Miller, of Amarillo, and Touchstone, Wright, Gormley & Price, all of Dallas, for appellant.

James G. Lumpkin, R. E. Underwood, Jr., and A. A. Lumpkin, all of Amarillo, for appellee.

JACKSON, Chief Justice.

The appellee, Boyce Long, instituted this suit in the District Court of Potter County to recover against the appellant, Leroy Broaddus, damages in the sum of $20,000 for personal injuries caused by a collision between his motorcycle and a taxi cab which was the result of the alleged negligence of the agents, servants and employees of the appellant.

The appellant answered by general demurrer, general denial and alleged appellee to be guilty of numerous acts of contributory negligence.

No complaint is made of the sufficiency of the pleadings and the findings of the jury will disclose the negligence alleged as a cause of action and the acts of contributory negligence urged as a defense were not sustained.

In answer to special issues the jury found, in effect, that Charles Shelley at the time of the collision was operating the taxi cab in question on a mission for and in behalf of appellant; that while driving along Sixth Street in an easterly direction he turned the taxi to his left before reaching the intersection of Sixth and Georgia Streets; that in making such turn he was guilty of negligence and such negligence was a proximate cause of the injuries to appellee; that Shelley immediately prior to the collision drove the taxi from the south side of Sixth Street to a point north of the center line thereof, and that such act was negligence and a proximate cause of the injuries of appellee; that Shelley drove the taxi from the south side of the street to the north of the center thereof when the street was not clear and unobstructed for a distance of at least fifty yards ahead; that in so driving when the street was not clear was negligence and a proximate cause of appellee's injuries; that while driving easterly along Sixth Street immediately prior to the collision Shelley failed to keep a proper lookout for persons who might be traveling west on the street; such failure was negligence and a proximate cause of appellee's injury.

The jury acquitted appellee of all acts of contributory negligence charged against him as a defense and no complaint is made thereof. They found that the injuries were not the result of an accident; that appellee had reasonably and necessarily incurred expenses for hospital service, nurse hire and doctor bills on account of his injuries in the sum of $599.15 and that he had sustained damages by reason of personal injuries in the sum of $3,400. On these findings the court rendered judgment in favor of appellee against the appellant in the sum of $3,999.15 with interest from date thereof at the rate of 6% per annum and for costs of suit, from which judgment this appeal is prosecuted.

The appellant presents as error the action of the court in refusing at its request to direct a verdict in its behalf because it contends the testimony conclusively shows that Charles Shelley, the driver of appellant's taxi cab, was not on duty at the time of the collision but was operating the machine after he had completed his day's work at the request of a fellow employee, Tommy Malone, without the knowledge or consent of his employer.

The record reveals without question that appellant was engaged in the taxi cab business in Amarillo, owned and operated eleven taxi cabs, transported passengers for hire and employed twenty-one drivers. Young Shelley, who was eighteen years

old, was engaged by appellant as a taxi driver on July 1, 1937. He was on duty and drove taxi No. 87 from 6:30 A. M. to 6:30 P. M. in the discharge of his duties. On August 5, 1937, the day of the collision, he operated taxi No. 87 until 6:30 P. M. when he returned to appellant's place of business and checked out for the day; that is, he delivered taxi No. 87 and turned in the money he had collected, less his percentage for his services. Tommy Malone was also employed by appellant as a taxi driver and drove cab No. 77 from 6:30 P. M. to 6:30 A. M. Some time prior to 6:30 P. M. on August 5th, Tommy Malone requested Charles Shelley to protect him on his cab No. 77; that is, drive it for him some thirty or forty minutes while he moved to a different rooming house. After Shelley had checked out, but while still in front of appellant's place of business, he met a customer, or prospective passenger, looking for a cab. He took cab No. 77, the one usually driven by Tommy Malone, and, in accordance with his previous promise to protect Malone, carried this passenger out east to the city limits of Amarillo and collected the fare for the service, a part of which belonged to appellant. While returning to the appellant's place of business, he was hailed by another prospective passenger whom he picked up and carried to his destination across town, San Jacinto Heights, and collected the fare therefor, a part of which belonged to appellant. He then began his return trip to appellant's headquarters and, according to his usual custom when in that part of town with no passenger, he started to cross the street to the "Musical Pig" in order to phone the appellant's office and see if any request had been left for cab service in that vicinity of town;—this was done in an effort to obtain a passenger for his company. There is some testimony to the effect that Shelley started across the street to the "Musical Pig" in order to phone Tommy Malone. The appellant, as well as several of his employees, testified that the arrangement made with Charles Shelley by Tommy Malone to protect his cab for thirty or forty minutes after 6:30 P. M. was not reported to appellant. The appellant does not question the sufficiency of the testimony to sustain the findings of the jury on the negligence of his driver, the injuries inflicted, nor the amount of the damages awarded. The main contention is that at the time of the collision Charles Shelley was not engaged in the course of his employment for the appellant.

The record shows that Shelley was employed as a taxi driver with authority to operate one of appellant's taxis and transport passengers for hire from place to place in Amarillo; that just prior to the accident he had taken taxi No. 77, the property of appellant, usually driven after 6:30 P. M. by Tommy Malone, and carried a passenger to the east side of Amarillo, secured another passenger whom he transported across town to San Jacinto Heights and collected fare from each of these passengers, a per 'cent of which belonged to appellant. On the way back to the office he, according to his custom, undertook to go to the "Musical Pig" in order to communicate with the office by phone about the business of appellant and the collision here involved occurred.

■ These facts certainly present as an issue to be determined by the jury whether or not Shelley was acting in the course of his employment and in the furtherance of his master's business at the time the collision occurred.

■ In Shrader v. Roberts, Tex.Civ. App., 255 S.W. 469, 470, it is said: "Proof of the ownership of the automobile having been established, and proof of the driver's employment by the owner also having been established, it seems that by presumption of fact, in the absence of proof to the contrary, it may be inferred that the driver was acting within the scope of his employment." Citing numerous cases. See also Ramirez v. Salinas et ux., Tex.Civ. App., 90 S.W.2d 891.

■ In Taylor, B. & H. Ry. Co. v. Warner, 88 Tex. 642, 32 S.W. 868, 870, the Supreme Court says: "Every person who is found performing the work of another is presumed to be in the employment of the person whose work is being done, and if the facts be such as to exempt * * * the person for whom the work is being performed, from liability for the acts of those performing such work, it devolves upon him who claims such exemption to make proof of the terms of the contract, showing that the relation of master and servant did not exist." See also L. W. Buckley v. Gulf Refining Co. et al., Tex. Civ.App., 123 S.W.2d 970.

■ The facts and presumptions in the record made a prima facie case and authorized a recovery unless rebutted to the

satisfaction of a jury. The appellant undertook to do this by the testimony of himself and his employees; however, in Mills et al. v. Mills, 228 S.W. 919, 920, the Commission of Appeals says: "It is settled law in Texas that it matters not how positive and uncontradicted the testimony of an interested party may be, the question of his credibility must be submitted to the jury."

In Pevehouse v. Oliver Farm Equipment Sales Co. et al., 114 S.W.2d 658, 663, this court said: "It is also the settled law that the court should not direct a verdict 'if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.' "

In Buick Automobile Co. v. Weaver, Tex.Civ.App., 163 S.W. 594, 596, it is said: "It is well settled that the master is liable for the tortious acts of his servant done while in the master's service, or in the discharge of his employment, or when the acts claimed to be tortious are done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed."

In Blashfield's Cyclopedia of Automobile Law, Permanent Edition, Volume 5, page 138, the author says: "The true test then of whether or not a servant is acting within the scope of his employment is whether the servant at the time of the injury complained of is performing a service for the master in furtherance of the master's business, not the method of its performance nor whether it is done in exact observance of details prescribed by the employer."

The court is not authorized to direct a verdict on the testimony of interested witnesses, nor unless justified after discarding all testimony adverse to plaintiff and giving full credit to the evidence favorable to him. The jurors are the judges of the credibility of the witnesses and the weight to be given to their testimony, and it was their exclusive province when their services were invoked to determine whether the case made by appellee was completely rebutted by the testimony of appellant and his witnesses and whether there were any circumstances tending to discredit and contradict the testimony of

such witnesses. City Investment & Loan Co. et al. v. Wichita Hardware Co. et al., 127 Tex. 44, 91 S.W.2d 683.

The appellant challenges as error the action of the court in refusing to define for the guidance of the jury the word "mission" used in special issue No. 1, which is as follows: "Do you find from the preponderance of the evidence that Charles Shelley, at the time of the collision in question, was operating the taxi cab in question on a mission for and in behalf of the defendant, F. Leroy Broaddus?"

The objection urged is that the term is a legal one requiring a definition and explanation for the guidance of the jury.

Article 2189 provides that: "In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

The word "mission" is defined in the standard English dictionaries to mean "a sending or being sent for some duty or purpose." The word, so far as we know or have been able to ascertain, has no precise legal significance but is a word well understood in common language and required no definition.

The appellant also challenges as erroneous the definition given by the court of "accident." The court submitted unavoidable accident in special issue No. 9, as follows:

"Were the injuries, if any, sustained by the plaintiff on the occasion in question, the result of an accident? Answer Yes or No.

"In connection with this issue, you are instructed that the word 'accident' means such an unexpected catastrophe as occurs without anyone being to blame for it; that is, without anyone being guilty of negligence in doing or permitting to be done or omitting to do the particular thing that causes such catastrophe.

"You are further instructed, in connection with this issue, that the burden is on the plaintiff to prove the negative of such issue by a preponderance of such evidence."

The objection is that the definition of the word "accident" failed to incorporate the question as to whether or not the negligence referred to in the definition constituted a proximate cause of the event in

question. The court in his general charge to the jury had defined "ordinary care," "negligence," "proximate cause of an injury," "new and independent cause," and "preponderance of the evidence" correctly and no complaint is made of such definitions. Construing the charge as a whole, in our opinion, it is not subject to the criticism contained in this assignment.

In our opinion, the other assignments presented are without merit.

The judgment is affirmed.