**LOUISIANA & ARKANSAS RAILWAY COMPANY, Appellant,**

v.

**Ruby PRUITT, Appellee.**

No. 6907.

Court of Civil Appeals of Texas.

Texarkana.

Jan. 10, 1957.

Rehearing Denied Feb. 7, 1957.

L. L. Bowman, Jr., Greenville, for appellant.

Ramey & Ramey, Sulpher Springs, Carter, Gallagher, Jones & Magee, Ben T. Warder, Jr., Dallas, for appellee.

FANNING, Justice.

Ruby Pruitt sued Louisiana & Arkansas Railway Company for personal injuries and for damage to her automobile sustained in a collision with one of defendant's trains at the intersection of Gilmer Street with the tracks of defendant in the city of Sulphur Springs, Texas, which collision occurred in the daytime on February 12, 1955. Trial was to a jury, and upon the answers of the jury to the various special issues submitted and agreed stipulations in the record, the trial court entered judgment for plaintiff and against defendant in the amount of $25,485.00. Defendant has appealed.

By its Points 1 and 2, inclusive, appellant contends to the effect that the evidence was insufficient to justify the submission to the jury of the issue as to whether the crossing in question was an extra-hazardous crossing and that the evidence was insufficient to support the jury's affirmative finding on that issue. By its Point 3, appellant contends that the verdict of the jury was so contrary to the great overwhelming weight of the testimony as to be manifestly unjust and clearly wrong.

Gilmer Street in the city of Sulphur Springs, also known as State Highway 11 and State Highway 154, extends in a general northerly-southerly direction through the city. Defendant Railway Company maintains two railroad tracks extending in an easterly-westerly direction which cross Gilmer Street at an approximate right angle. The track on the south side is the main line and a spur or "grocery" track is on the north side.

Plaintiff while operating her automobile in a southerly direction on Gilmer Street was in the act of crossing the tracks when her automobile was hit on the main line track by an eastbound, 96-car freight train of defendant pulled by a diesel engine.

At this crossing the railroad maintained only a buckboard standard crossing sign.

Plaintiff alleged that the crossing was extra-hazardous and that the defendant was negligent in failing to maintain at such crossing: (1) An automatic and electrically operated wig-wag signal; (2) a set of railway crossing gates; or (3) a flagman.

In response to Special Issues Nos. 1 and 1a, the jury found that the conditions surrounding the crossing in question were such as to render it extra-hazardous and that such conditions were known to the defendant or ought to have known by the use of ordinary care.

The jury further found that the defendant was guilty of negligence proximately causing the collision in question in failing to have an automatically operated wig-wag signal at such crossing; in failing to have a set of railway crossing gates at such crossing, and in failing to post a flagman at such crossing.

In Tisdale v. Panhandle & S. F. Ry. Co., Tex.Com.App., 228 S.W. 133, 135, 16 A.L.R. 1264, the court quoted from Grand

Trunk Ry. Co. of Canada v. Ives, 144 U. S. 408, 12 S.Ct. 679, 36 L.Ed. 485, as follows:

"'* * * It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous; as, for instance, that it is in a thickly populated portion of a town or city; or that the view of the track is obstructed either by the company itself or by other objects proper in themselves; or that the crossing is a much-traveled one, and the noise of approaching trains is rendered indistinct and the ordinary signals difficult to be heard by reason of bustle and confusion incident to railway or other business, or by reason of some such like cause; and that a jury would not be warranted in saying that a railroad company should maintain those extra precautions at ordinary crossings in the country.'"

We think there was ample evidence of probative force in this case to meet the requirements of the rules enunciated by the court in Tisdale v. Panhandle & S. F. Ry. Co., supra, in that the crossing in question was situated in a thickly populated area, the crossing was a much-traveled one and was obstructed by objects proper in themselves, viz., a house, garage, trees and telephone poles.

Aerial photographs were taken of the crossing and introduced in evidence by plaintiff. These photographs clearly show that the crossing is in a thickly populated portion of the city and clearly show the crossing, and the house, garage, trees and telephone poles which obstruct the view of the crossing. The house in question is on the northwest corner of the railroad intersection and the south side of this house is 30 feet 11 inches from the nearest rail of defendant's tracks, and the south side of the garage is 10 feet 4½ inches from the nearest rail. The southeast corner of the house is 46 feet from the center of Gilmer Street.

T. A. Wright, a witness for plaintiff, testified:

"Q. As you approach this crossing from the North going South for a whole city block or so, is it open pasture as you approach the crossing or heavily populated with houses on every block? A. Heavily populated.

"Q. As you approach the crossing from the North going South so far as you know and have been able to see, having been on the ground, and looking to your right can you see to the right any until you get to the house on which you have the red dot? A. No, sir.

"Q. After you do get beyond the house that has the red dot, going South do you have a clear unobstructed view of the right of way or is something else in the way? A. No, sir, that garage is in the way, and telephone poles and trees.

"Q. That after you clear the obstruction of the house then? A. Yes, sir."

The trunk of one tree is 21 inches in diameter and the trunk of the other tree is 34 inches in diameter.

Mr. Wright also took photographs from a driver's seat in an automobile on Gilmer Street at measured distances from the crossing, which were introduced in evidence. The view in each photograph is to the west from the driver's seat.

Exhibit No. 4 was taken at a distance of 55 feet from the nearest rail; Exhibit No. 6, 40 feet from the nearest rail; Exhibit No. 7, 25 feet from the nearest rail and Exhibit No. 8, 15 feet from the nearest rail.

It is apparent from these photographs that the various obstructions are so situated that the view of an automobile driver approaching the crossing in question from the north as did plaintiff was very limited. It is also apparent that these obstructions also obstructed the view of the operators of defendant's train as its fireman, I. W. Treadway, who was seated in the fireman's chair on the left side of the engine, testified as follows:

"Q. Did you see the automobile driven by Miss Pruitt before the collision occurred? A. Seconds before, seconds.

"Q. And at the time you first saw her car, where would you say the front end of your engine was with reference to Gilmer Street? A. Well, I judge between 20 and 25 feet.

"Q. 20 and 25 feet from the edge of the street itself? A. Well, now, it would be between 20 and 30 feet approximately.

"Q. At the time you first saw her car where was her car with reference to the track of the main line? A. Just as it come in sight from *the obstructions.*

"Q. Would you say it was something like 10 or 20 or 30 feet from the main line at the time you saw her or somewhat *father* on or a little bit closer? A. I would judge it was around 30 or 35 feet, approximately that." (Emphasis added.)

The evidence clearly shows that Gilmer Street is a city street, carrying much city vehicular traffic and also is a part of State Highways Nos. 11 and 154, and carries much highway vehicular traffic.

The evidence also shows defendant operates five trains a day through Sulphur Springs each day of the week, except Sunday, when four trains are operated.

Defendant's employee testified that the speed of the train immediately prior to the collision was from 10 to 12 miles per hour. The evidence shows that it took about 170 to 190 feet for the train to stop after the collision. It was a controverted issue as to whether the engine emitted an *audible* signal within the statutory distance.

The evidence further showed that the defendant maintained automatic electric signals on Oak Street, the next street east of Gilmer Street, but only had a buckboard sign on Gilmer Street, despite the fact that Gilmer Street carried far more vehicular traffic than Oak Street.

Correspondence between the city manager of Sulphur Springs and defendant concerning the hazardous condition of the Gilmer Street crossing was introduced in evidence and there was ample evidence to support the finding of the jury in answer to Special Issue No. 1–a concerning notice of the defendant as to the condition of the crossing.

It is our opinion that the evidence in this case raised the issue of extra-hazardous crossing for the jury to determine. See the following authorities: Tisdale v. Panhandle & S. F. Ry. Co., Tex.Com.App., 228 S.W. 133, 16 A.L.R. 1264; Port Terminal Railroad Ass'n v. Noland, Tex.Civ.App., 288 S.W.2d 276, wr. ref. NRE; Attebery v. Henwood, Tex.Civ.App., 177 S.W.2d 95, wr. ref. w.o.m.; Galveston, H. & S. A. Ry. Co. v. Wells, 121 Tex. 310, 50 S.W.2d 247.

We have carefully reviewed the authorities cited by appellant in its able brief and are of the opinion that same are clearly distinguishable from the facts in the case at bar. Some of these cases deal with collisions at country crossings, others deal with collisions at city crossings where either the traffic or the obstructions were not comparable to the facts in the case at bar, and some deal with situations where a vehicle ran into a train which was already occupying the crossing and was plainly visible.

We hold that there was ample evidence of probative force to sufficiently support the jury's finding on the issue of extra-hazardous crossing and that the trial court did not err in overruling defendant's motion for instructed verdict and motion for judgment non obstante veredicto. Appellant's Points 1 and 2 are respectfully overruled.

We also hold that the verdict of the jury was not so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust and clearly wrong. Appellant relies to great extent upon a plat of the crossing in question and the testimony of Mr. Crane who prepared the plat who testified to the effect that the view of the crossing was largely unobstructed according to his view and measurements. On cross-examination he testified that his distances were measured from the center of the main track and that in measuring north he crossed these rails. The distance between the center of the main line and the north rail of the spur track is 13 feet and if a driver is seated about seven feet back of the bumper of his automobile, assuming the automobile was stopped 50 feet from the nearest rail, he would be about 20 feet further north than is shown on the plat. The weight and credibility of Mr. Crane's testimony were matters for the jury to determine and they were not bound by his testimony in view of the contrasting testimony of plaintiff's witnesses. There was ample evidence to the effect that a driver of an automobile approaching the crossing from the north had no view of the track to the west until the driver had passed the house on the northwest corner and that thereafter the garage, trees and telephone poles further obstructed the view to the west. The jury in answering the issue of extra-hazardous crossing was not bound to follow the plat and testimony of Mr. Crane, but could rely upon the photographs introduced in evidence by plaintiff, the testimony of Mr. Wright, the testimony of defendant's fireman Treadway, and the other evidence in the case. It was also well established that Gilmer Street was a heavily traveled thoroughfare and that the crossing was situated in a thickly populated area of the city of Sulphur Springs. Appellant's Point 3 is respectfully overruled.

■ Appellant's Point 4 reads as follows:

"The error of the Court in overruling defendant's objection to the admission of the testimony of the witness Johnson, and the map identified by him, thus holding that the traffic count incorporated on said map was evidence of the traffic using said crossing."

Plaintiff introduced in evidence by the witness T. A. Johnson, Maintenance Foreman of the Texas State Highway Department for Hopkins County, a map of the Texas State Highway Department in 1954 showing the traffic count of State Highways 11 and 154 at a point south of Sulphur Springs on the south edge of the city. The sole objection (which was once later renewed) of defendant to the admissibility of the map and testimony of Mr. Johnson relative thereto was (with ruling and exception) as follows:

"Mr. Bowman: We object because the testimony shows the count was made South of Sulphur Springs. Exhibit 13 shows numerous streets branch off that highway from the time it enters the South end of Gilmer street until it reaches the L & A railroad and the traffic count outside of Sulphur Springs on the South wouldn't be competent evidence of the number of vehicles crossing the Gilmer street crossing, unless other vehicles that didn't include that were excluded.

"Court: As I understand, Mr. Wright testified the highways merge on down South of here.

"Mr. Jones: Yes, sir.

"Court: I will overrule the objection.

"Mr. Bowman: Note our exception."

The witness Wright had previously testified that the two highways merged on the south side of Sulphur Springs where Gilmer Street begins and that thereafter Gilmer Street carried the traffic of both highways through the city. Also defendant fully cross-examined Johnson as to how the traffic counts were made by contact type machine. On re-direct, Johnson testified that the traffic count of 4,060 vehicles was not divided between northbound and southbound traffic on either of said highways and also that a car could cross the Gilmer Street crossing without reaching the traffic counters. The testimony also fully disclosed to the jury the conditions under which the traffic counts were made and the fact that some vehicles crossing the tracks would not be included therein and also the further fact that the traffic count could also include vehicles that did not reach the crossing. It is our view that under the circumstances shown by this record that the weight and credibility of Johnson's testimony with reference to the map in question were matters for the jury to properly evaluate.

Besides, there was other ample evidence, in fact we think it was undisputed, that Gilmer Street was a muchly traveled thoroughfare and carried a great amount of vehicular traffic.

Appellant nowhere in its brief points out how it was harmed by the admission in evidence of the map in question and Johnson's testimony relative thereto. Appellant's Point 4 does not present reversible error under this record and is respectfully overruled. Rules 434 and 503, Texas Rules of Civil Procedure.

By its Point 5, appellant contends that there was a conflict in the answers of the jury to Special Issues Nos. 14 and 20.

In answer to Special Issue No. 14, the jury found that at the time and on the occasion in question and immediately prior thereto, plaintiff failed to apply the brakes on her automobile in time to avoid the colli- sion. However, in response to Special Issue No. 15, the jury found that such action was not negligence.

Special Issue No. 20 and the answer of the jury thereto were as follows:

"Do you find from a preponderance of the evidence that as Ruby Pruitt approached the railroad crossing on the occasion in question, she violated subsection, 86(c) of Article 6701d of the Revised Civil Statutes of Texas, which article and subsection are as follows:

" 'Sec. 86. Obedience to Signal Indicating Approach of train. Whenever any person driving a vehicle approaches a railroad crossing, the driver of such vehicle shall stop within fifty (50) feet, but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

" '(c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard; * * *'

"Answer Yes or No.

"Answer: /s/ No."

In Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558, 562, it is stated:

" * * * It is the duty of the trial court to reconcile apparent conflicts in the jury's findings if this can be reasonably done in the light of the pleadings and the evidence, the manner in which the issues were submitted, and in view of the other findings when considered as a whole. * * *"

We think the alleged conflict between the answers to the two issues in question can clearly be reconciled. Plaintiff (who suffered serious injuries and was knocked unconscious) testified that she did not remember being involved in the collision with the

train and had no memory of the immediate events leading up to the collision. The fireman on defendant's train testified that when he first saw plaintiff's automobile it had come from behind the obstructions and was approximately 30 to 35 feet from the main line track and that her automobile was in motion at that time. The nearest rail of the railroad crossing was 13 feet north of the center of the main line (there was also about two feet distance between the center of the main line and the north rail of the main line) and when the fireman saw plaintiff she was between 19 and 24 feet from the nearest rail of the crossing. Under Special Issue No. 20 the burden of proof was clearly upon defendant to prove that plaintiff violated Section 86(c) of Article 6701d, Vernon's Ann.Civ.St., and the burden of proof was not on plaintiff to prove that she did not violate said statute. Defendant offered proof as to plaintiff's conduct in this respect only for a distance of 19 to 24 feet from the nearest rail of the crossing, and a distance of from 30 to 35 feet from the main line track. The record is silent as to the driving conduct of appellee, as to whether she stopped at a point between 35 feet and 50 feet from the main line track. Since there was no evidence in the record that plaintiff did not stop at a point between 24 and 50 feet from the nearest rail (and at a point between 35 and 50 feet of the main line track), and since the burden of proof on Special Issue No. 20 was on defendant, the jury could correctly conclude from the preponderance of the evidence that plaintiff did not fail to stop within 50 feet but not less than 24 feet from the nearest rail, and that after proceeding she failed to apply her brakes immediately before the collision to avoid same. Such findings would not be inconsistent and could clearly be reconciled.

Also the answer of the jury to Special Issue No. 20 is not a finding of any one ultimate fact. The issue inquired as to whether or not plaintiff stopped her automobile in the manner required by the statute, whether or not she did not proceed until she could

do so safely, whether or not the engine when approaching within approximately 1500 feet of the crossing emitted an audible signal from such distance, and whether or not such engine by reason of its speed or nearness to such crossing was an immediate hazard; and as we analyze the record, we think that clearly these multiple fact issues were raised by the evidence in the case.

Furthermore, the jury found that the failure of plaintiff to apply her brakes in time was not negligence and therefore the related proximate cause issue was not answered. Likewise, the related proximate cause issue to Special Issue No. 20 was not answered.

In Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, 991, it is stated:

"* * * To require a judgment entered on a verdict containing conflicting answers to be set aside, the conflict between the answers must be such that one answer would establish a cause of action or defense, while the other would destroy it. In Pearson v. Doherty, 143 Tex. 64, 70, 183 S.W.2d 453, 456, the court quotes with approval as the test in cases of this kind from the opinion in Howard v. Howard, Tex.Civ.App., 102 S.W.2d 473, 475, writ refused, as follows: 'The test in such (a) case is, whether taking the finding alone in the one instance, a judgment should be entered in favor of the plaintiff; and taking it alone in the other, judgment should be entered in favor of the defendant.' This statement was also quoted with approval in Ft. Worth & D. C. Ry. Co. v. Welch, Tex.Civ.App., 154 S.W.2d 896, 898, and Goss v. Longview Hilton Hotel Co., Tex.Civ.App., 183 S.W.2d 998, 999.

"To apply this test, the court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all of the rest of the verdict, and if, so considered, * * * one of the answers would require a judgment

in favor of the defendant, then the answers are fatally in conflict. It is essential that the party seeking to set aside a verdict on the ground of conflict must be able to point out that one of the conflicting answers of the jury, in connection with the rest of the verdict except the issue with which it conflicts, necessarily requires the entry of a judgment different from that which the court had entered. The petitioner cannot meet this test because the jury has not made a finding in its favor on proximate causation. Petitioner is not in a position to complain of this failure because it did not object to the conditional submission of this issue or insist that it be answered. We therefore hold that the verdict does not disclose a fatal conflict."

Also in this connection see the case of Texas & Pacific Ry. Co. v. Midkiff, Tex. Civ.App., 275 S.W.2d 841.

We hold that there is no irreconcilable conflict between the jury's answers to Special Issues Nos. 14 and 20. Appellant's Point 5 is respectfully overruled.

■ By its Point 6, appellant contends that the evidence established as a matter of law that plaintiff violated subdivision (c) of Section 86 of Article 6701d and was not entitled to recover as a matter of law. The above referred to statute was incoporated verbatim in Special Issue No. 20 hereinbefore quoted in our discussion under appellant's Point 5, which issue the jury answered "No."

Special Issue No. 20 was clearly a defensive issue and the burden was upon the defendant to prove by a preponderance of the evidence that plaintiff violated the provisions of the statute. In Missouri-Kansas-Texas R. Co. v. McFerrin, Tex., 291 S.W.2d 931, 935, it is stated:

"As we analyze the statute it imposes two duties on a motorist approaching a grade crossing: (1) A duty to stop the vehicle within fifty [feet] but not less than fifteen feet from the nearest rail, and (2) a duty on one having thus stopped not to proceed until he can do so safely. The two duties cannot both be violated on the same occasion. The duty not to proceed comes into existence only if the duty to stop has been obeyed. The statute thus furnishes to a railroad-defendant two independent and alternate grounds of defense based on a violation by a motorist-plaintiff of the duties thereby imposed, and a defendant relying on a violation of the statute as a defense to liability should plead specifically which duty was violated by the plaintiff, or plead violation of both duties in the alternative.

"Further analyzing the statute, it appears obvious that the duties imposed on the motorist are not absolute but are conditional. Neither duty comes into existence unless and until these three conditions exist: (1) A train must be 'approaching' the crossing; (2) the approaching train must be 'plainly visible', and (3) the train must be 'in hazardous proximity' to the crossing. Before either duty can be said to have been absolute in a particular case so as to form the basis of an instructed verdict all three conditions must be conclusively established by the evidence."

The Supreme Court in the McFerrin case, supra, was analyzing Section 86(d) of the statute in question, while in the case at bar the defendant is relying on an alleged violation of Section 86(c) of the statute in question. Applying the Supreme Court's decision to Section 86(c) of the statute in question, it is our opinion that before the duty of plaintiff to stop came into existence it was incumbent upon defendant to prove by a preponderance of the evidence (1) that defendant's engine at approximately 1,500 feet from the crossing emitted a signal audible from that distance and (2) that the engine by reason of its speed or nearness to the crossing was an immediate hazard.

In the October, 1956 issue of the Texas Law Review there is an article by Hon. Robert W. Calvert, Associate Justice of the Supreme Court of Texas, which contains an excellent discussion of the McFerrin case, supra, and the various special issues arising under Article 6701d, Sec. 86(d), V.A.C.S.

■ Under this record we cannot say as a matter of law that the engine by reason of its speed and nearness to the crossing was an immediate hazard. In Missouri-Kansas-Texas R. Co. v. McFerrin, supra, the court held that the occurrence of a collision did not establish conclusively that the train was in "hazardous proximity" to a crossing. The court in this case further said:

> " * * * It seems to us that in determining whether the fact situation is such as to call the statutory duty into existence, we should not hold the motorist to greater wisdom or better judgment than a reasonably prudent person, similarly situated, would exercise. Accordingly, we apply the objective common-law test of the reasonably prudent man and hold that before it can be said in a given case that an approaching train was 'plainly visible' as a matter of law, it must appear, as a matter of law, that a reasonably prudent person, situated as was the motorist and exercising ordinary care for his own safety, should have seen it. We further hold that it will not be said that a train was 'in hazardous proximity' to a crossing, as a matter of law, unless all the attendant facts and circumstances it can be said, as a matter of law, that by reason of the speed and nearness of the train a reasonably prudent person should have known that an attempt to proceed over the crossing ahead of the train was hazardous."

And as more fully pointed out in our discussion under Point 5, a fact question existed as to whether plaintiff stopped her vehicle within 50 feet and not less than 15 feet from the nearest rail of defendant's tracks.

And as pointed out in our discussion under Point 5, defendant offered no testimony as to plaintiff's driving conduct between a distance of 24 to 50 feet from the nearest rail of defendant's tracks at the crossing, and there was no testimony in the record from any source as to the driving conduct of plaintiff (whether she stopped or not) before she reached the place where defendant's witnesses first saw her vehicle, to-wit, 35 feet from the main line and 24 feet from the nearest rail. It is true that plaintiff did not testify as to her driving conduct and this is explained by her testimony that she did not have any memory of such events. The record shows that she was knocked unconscious and received severe injuries. Doctor Longino, who treated plaintiff, testified to the effect that in his opinion due to the injuries suffered by plaintiff, she had retrograde amnesia as to the events leading up to the collision. The jury observed plaintiff and heard her testimony; they were the judges of the credibility and of the weight to be given her testimony. Even though plaintiff's testimony would have been highly pertinent on the issue, she offered a reasonable explanation of her lack of memory (which explanation was corroborated by Dr. Longino) which undoubtedly was believed by the jury, and it was still necessary for the defendant to prove by a preponderance of the evidence that plaintiff failed to stop within the stopping area outlined by the statute. In this connection, we again quote from Missouri-Kansas-Texas R. Co. v. McFerrin, supra, as follows:

> "We cannot hold, however, that the evidence is conclusive that the deceased failed to stop as required by the statute. In this connection it may be noted that in answer to two special issues the jury found that the deceased did not fail to stop within fifty and not less than fifteen feet of the nearest rail, and did not fail to stop after the train became plainly visible and in hazardous proximity to the crossing.
>
> *"The burden was not on the respondent to prove that the deceased stopped;*

*it was on petitioner to prove, as a necessary part of its statutory defense, that the deceased failed to stop.* The only eyewitness to the events immediately preceding and surrounding the collision was petitioner's fireman. He testified that the deceased did not stop before going on the crossing.

"The fireman was an interested witness. City of Waco v. Branch, Tex. Civ.App., 8 S.W.2d 271, 274, writ refused; Flack v. First Nat. Bank of Dalhart, 148 Tex. 495, 226 S.W.2d 628, 633. As to the effect to be given to the testimony of an interested witness we quote from McGuire v. City of Dallas, 141 Tex. 170, 170 S.W.2d 722, 728:

" ' * * * The general rule is that evidence given by an interested witness, even though uncontradicted, presents an issue to be determined by the jury. Mills v. Mills, Tex.Com.App., 228 S.W. 919; Id., 111 Tex. 265, 231 S.W. 697. But this rule is not without exception. Where the testimony of an interested witness is uncontradicted, is clear and positive, and there are no circumstances in evidence tending to discredit or impeach such testimony, conclusive effect may be given thereto. Trinity Gravel Co. v. Cranke, Tex.Com.App., 282 S.W. 798, loc. cit. 801. American Surety Co. v. Whitehead, Tex.Com. App., 45 S.W.2d 958, loc. cit. 961. The applicable rule is further strengthened where the testimony of the interested witness is, as in this case, corroborated by other witnesses and the opposite party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so. Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 350, 114 S.W.2d 226, 136 S.W.2d 207.'

"In this case the fireman's testimony is not strengthened by the opportunity to, but failure of, respondent to impeach him. He was the only eyewitness. Moreover, the record is not devoid of evidence casting doubt and suspicion on his testimony. There is testi-

mony that after the collision the automobile was found to be in second gear. This testimony may not have been sufficient to sustain a finding that deceased did stop his automobile, a matter we are not called upon to decide. It is sufficient to cast doubt on the testimony of the fireman, particularly when coupled with the presumption that deceased obeyed the law. Flack v. First Nat. Bank of Dalhart, supra. We hold that the uncorroborated testimony of the fireman did not require the giving of an instructed verdict." (Emphasis added.)

The burden of proof was clearly upon the defendant to prove by a preponderance of the evidence that the plaintiff failed to stop within the statutory stopping area. In the McFerrin case, supra, the Supreme Court stated that the deceased in that case must have been presumed to have obeyed the law. In the case at bar where plaintiff had no memory of the collision and immediate events preceding thereto, there can be no presumption that she violated the law by not stopping, and the presumption must be (until it is overcome by proof to the contrary) that she did not violate the law. The limited testimony of defendant's witnesses who did not observe plaintiff throughout the statutory stopping area did not overcome such presumption. We hold that under this record the jury was clearly authorized to answer Special Issue No. 20 in the negative. Appellant's Point 6 is respectfully overruled.

Appellee also contends in its brief that the testimony of two of plaintiff's witnesses (who lived near and adjacent to the crossing, who were at home at the time of the collision and in a position to hear the whistle and bell of the engine if blown and/or rung) to the effect that they did not hear (or recall hearing) any signal of the engine prior to the collision, and the testimony of another witness (who was in a similar position) who did not hear (or recall hearing) the signal of the engine until just immediately prior to the collision, raised a

fact issue as to whether the engine emitted an *audible* signal within the statutory distance. Several of defendant's employees, who were interested witnesses, testified either that the signals were given within the designated distance or were heard. Mr. Nichols (the only non-employee of defendant who testified as a witness for defendant with reference to the signals) who ran a store near the Oak Street crossing where defendant had electric signals testified that he heard those signals and heard the engine whistle. However, his testimony was not very definite, as shown by the following excerpts from his testimony:

"Q. Did you hear the train whistling? A. Yes, sir.

"Q. How long before the actual collision do you estimate? A. I couldn't say whether it was over three or four or five minutes.

"Q. You are not clear as to the length of time you heard it? A. No, sir.

\*   \*   \*   \*   \*   \*

"Q. Did you hear the whistle blowing just as the train hit Gilmer Street or farther back, or do you know? A. I don't know."

In Paris & G. N. Ry. Co. v. Lackey, Tex. Civ.App., 171 S.W. 540, 542, in an opinion by Chief Justice Willson, it is stated:

" \* \* \* That the testimony of witnesses that they did not hear the bell was admissible to prove it was not rung cannot be doubted. 'Courts,' said Professor Wigmore, 'have often been asked to exclude testimony based on what may be called negative knowledge; i. e., testimony that a fact did not occur, founded on the witness' failure to hear or see a fact which he would supposedly have heard or seen if it had occurred. But there is no inherent weakness in this kind of knowledge. It rests on the same data of the senses. It may even sometimes be stronger than affirmative impressions. The only requirement is that the witness should have been so situated that in the ordinary course of events he would have heard or seen the fact had it occurred.' And he adds: 'This sort of testimony, on the authorities stated, is constantly received—particularly in proof of the failure to give railroad signals,' etc. [Citing cases.] Such testimony being admissible as proof, in a case like this one, that the bell was not rung, whether it was sufficient proof of the fact or not should be left to the determination of the jury."

It is our view that under this record a fact issue was raised as to whether an *audible* signal was given by defendant's engine within the statutory distance and this would be an additional ground for overruling appellant's Point 6. However, irrespective of this matter, there were also other definite fact issues clearly and unquestionably raised with respect to Special Issue No. 20, as hereinbefore pointed out in our foregoing discussion of appellant's Point 6.

Finding no error in the record, the judgment of the trial court is affirmed.