**TISDALE et al. v. PANHANDLE & S. F. RY. CO.** (No. 206–3295.)

(Commission of Appeals of Texas, Section B. March 2, 1921.)

**I. Railroads ⬤⇒307(7)—Flagman required at unusually dangerous crossings.**

Railway companies should maintain a flagman in towns and cities at crossings which are unusually dangerous or attended with more than ordinary hazard, though there is no city ordinance or statute requiring it.

**2. Trial ⬤⇒142—If facts admit of but one conclusion, they raise a question of law for the court.**

If a state of facts be such that all reasonable minds would draw the same conclusion, it presents a question of law for the court rather than a question of fact for the jury.

**3. Railroads ⬤⇒350(5)—Negligence in not maintaining flagman held question for jury.**

In an action for the death of the driver of a vehicle struck by a work train backing across the main business street of a town of 1,500 people, evidence that the crossing was unusually dangerous by reason of obstructions hindering the view and hearing *held* sufficient to justify submission of the issue of defendant's negligence in not maintaining a flagman at the time of the accident, though there was no ordinance or statute requiring a flagman.

**4. Railroads ⬤⇒307(4)—Duty to maintain flagman not dependent on population, but on danger.**

The proper test for determining the question of a railroad company's negligence in not maintaining a flagman at a crossing is not the population of the town or city, but whether the crossing is unusually dangerous and attended with more than ordinary hazard.

**5. Appeal and error ⬤⇒930(4)—Where one of three issues of negligence is held erroneous, a general verdict cannot stand.**

A contention that a verdict against defendant railroad for injuries at a crossing should not have been reversed on appeal on a finding that one issue of negligence was wrongfully submitted to the jury, because the verdict was general and there were three issues of negligence submitted, is not well taken, since the Court of Civil Appeals could not know on which issue the verdict was based.

**6. Appeal and error ⬤⇒1114—Supreme Court cannot set aside reversing and remanding judgment of Court of Appeals and affirm judgment of district court.**

Where the Court of Civil Appeals reversed and remanded a cause on the ground that an issue of negligence was erroneously submitted, and the Supreme Court found that such issue was properly submitted, *held*, that the Supreme Court could not set aside the judgment of the Court of Appeals and affirm that of the district court, but must affirm the judgment of the Court of Appeals and remand the cause for further proceedings in accordance with opinion of Supreme Court.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by Mrs. Martha A. Tisdale and another, on behalf of themselves and others, against the Panhandle & Sante Fé Railway Company. Judgment for plaintiffs was reversed by the Court of Civil Appeals (199 S. W. 347), and the plaintiffs bring error. Judgment of the Court of Civil Appeals affirmed, and cause remanded to the district court for further proceedings.

Kimbrough, Underwood & Jackson, of Amarillo, and Chas. C. Cook, of Pampa, for plaintiffs in error.

Terry, Cavin & Mills, of Galveston, and Hoover & Dial and H. E. Hoover, all of Canadian, for defendant in error.

POWELL, J. This is an action in damages, instituted in the district court of Gray county, Tex., by Martha A. Tisdale and May Bell Tisdale, for themselves and others, against the Panhandle & Santa Fé Railway Company, for the alleged negligent killing of C. R. Tisdale by said railway company on a public crossing near the depot in the town of Pampa on the 15th day of June, 1915. Plaintiffs alleged three grounds of negligence on the part of said railway company in the killing of the said C. R. Tisdale as follows: (1) Failure to keep a watchman at the crossing; (2) pushing the train over the crossing without having any one stationed on the east (rear) end of the caboose while said train was being backed over the crossing; (3) pushing the train rapidly and hurriedly from a point a short distance from said crossing over the same, without blowing the whistle or ringing the bell.

Defendant answered by general and special exceptions, general denial, and pleas of contributory negligence and assumed risk.

A trial was had before a jury, which, in response to a general charge of the court, returned a verdict in favor of Mrs. Martha A. Tisdale for $5,000 and May Bell Tisdale for $1,500. Judgment was entered accordingly.

Defendant in error perfected its appeal from said judgment, and presented various assignments of error in the Court of Civil Appeals. Said court overruled all of the assignments of error, except those which attacked the action of the trial court in submitting to the jury the issue of negligence on the part of defendant in failing to have a flagman or watchman at the public crossing where this accident occurred. The defendant in error contended that, as a matter of law, there was not sufficient evidence to warrant the court in submitting this issue to the jury, and this contention became the basis of two assignments of error, which the Court of Civil Appeals sustained, and re-

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

versed the judgment of the trial court, and remanded the cause. See 199 S. W. 347.

[1] The sole question for determination in this connection by this court is whether or not the trial court erred in submitting the aforesaid issue to the jury. There was no objection to the form of the charge used by the trial court in doing so. It was in the usual form, the court asking the jury to determine whether or not an ordinarily prudent person, under the same or similar circumstances, would have provided a flagman at said crossing.

Were the facts in this case sufficient to raise said issue and require its submission to the jury? The relevant facts, as found by the Court of Civil Appeals, are:

"It appears that prior to the accident Tisdale, accompanied by R. P. Porter, in the former's buggy, was driving south on a main street of the town of Pampa, with the intention of crossing appellant's line of railway. It appears that there was north of the main line what is known as the house track, which left the main line several hundred feet west of the place of the accident, and ended at the west line of the street along which Tisdale and Porter were traveling; that there was one car loaded with ice, and possibly others, standing on the house track. This track was about 30 feet north of the main track. It is clear that after passing south beyond the car standing on the end of the house track the view of the main track toward the west was further obstructed by a temporary depot, situated on the north side of the main track. This depot was a box car, without the wheels, resting upon supports near the main track. Besides the house track, northwest of the temporary passenger depot, at a distance not shown by the testimony, was another old box car, which was used as a freight depot. If the map attached to the statement of facts correctly shows the location of the ice car and the two old box cars used for passenger and freight depots respectively, appellant's insistence that deceased was guilty of contributory negligence as a matter of law cannot be sustained. It appears from the evidence that the train which caused the death of Tisdale was a work train; that it came backing into Pampa from some point west of the town, and had pulled in on what is known as the passing track, some six feet south of the main line, in order that a through freight train which had already whistled for the station might have the right of way over the main track."

Again:

"The court, in a general charge, submitted to the jury the issue as to whether or not the appellant was negligent in failing to keep a watchman at the crossing where the accident occurred. The evidence upon this issue was uncontroverted to the effect that no watchman or flagman was kept there. Several witnesses testified to facts bearing upon this issue, showing that Pampa was a town of from 500 to 1,500 people, that the crossing was frequently used by the public, and that there was considerable traffic over it during the season of the year in which the accident occurred. It

was shown that there were no factories or anything else that would make an unusual noise in the neighborhood of the crossing, and nothing that would keep a person from hearing the movement of freight trains. One witness testified that he had lived at Pampa a great many years, and that the principal noise to be heard in the town was the movement of trains."

Again, in the opinion on rehearing:

"We find that the street upon which the accident occurred was the main crossing of the railroad in the town of Pampa; that it was the main business street; that as shown by the map in evidence the accident occurred 210 feet east of Hobart's office on the main street; that after leaving Hobart's office, going toward the main track, there was no obstruction until Tisdale reached the point in the street where the house track ended: that there were several cars on the house track, extending from the line of the street west; that, as shown by the map, it was 50 feet from the house track to the main line where the accident occurred. Between the house track and the main line there was located a box car, about 60 feet west of the street; this box car was on the ground by the side of the main track, and was used as a temporary depot; further west, 50 feet, and near the house track, was another old box car used for a freight depot; 600 feet west of the street, and located between the house track and the main track, was a wellhouse and pumphouse; that the crossing was used by the town people and by the rural population living 15 or 20 miles southward and eastward from the crossing; that such farming population averaged about one family to each section of land; that at the time of the accident the wheat harvest was on, when travel was most active over the crossing; that there was a considerable transient population in the town at that time; that several buildings were in progress in the town, amongst them a new depot for the appellant; that at the time of the accident work on the depot had been stopped. Appellant's employees operating the train knew that the crossing was an important one, and that at times there was heavy traffic over it."

It is admitted that at the time of this accident there was no statute or city ordinance requiring defendant in error to maintain a flagman at this crossing.

The rule of law applicable to the determination of the issue now before this court has been well stated, as follows:

"In order to raise the issue whether the railway company is guilty of negligence in failing to station a watchman at a public crossing, it is not necessary to show that persons about to use the crossing are prevented from discovering the approach of trains by permanent obstructions, as appellant seems to contend. If the location of the crossing and the conditions surrounding it, together with the switching of cars and the operation of its trains by the company, rendered the same unusually hazardous, then it was a question of fact for the determination of the jury whether the company in the exercise of reasonable care should have stationed a watchman at the crossing." M.,

K. & T. Ry. Co. v. Hurdle, 142 S. W. 992 (writ of error denied by the Supreme Court).

The opinion above quoted was justified by a former opinion of the Supreme Court of Texas, in which Judge Brown used the following language:

"The court charged the jury, in effect, that if a person of ordinary prudence would, under all the circumstances, have kept a flagman or watchman at the crossing where the plaintiff was injured, then the failure on the part of the railroad company to keep such flagman or watchman was negligence. It is objected to this charge that the law does not require a railroad company to keep a watchman or flagman at crossings on public highways, and that, if the train itself is properly managed, there can be no liability on the part of the railroad company; that it is not required to provide a person to notify travelers upon the public highway of the approach of its trains. There is a conflict of authority upon this question, but the weight of authority and sound reasoning sustains the charge given by the court." M., K. & T. Ry. Co. v. Magee, 92 Tex. 616, 50 S. W. 1013.

Judge Brown, in the opinion just above quoted, cited a decision of the United States Supreme Court in support of his position. Said latter court, in the case referred to by Judge Brown, in a very learned opinion by Justice Lamar, spoke as follows:

"As a general rule, it may be said that whether ordinary care or reasonable prudence requires a railroad company to keep a flagman stationed at a crossing that, is especially dangerous is a question of fact for a jury to determine, under all the circumstances of the case, and that the omission to station a flagman at a dangerous crossing may be taken into account as evidence of negligence, although in some cases it has been held that it is a question of law for the court. It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous; as, for instance, that it is in a thickly populated portion of a town or city; or that the view of the track is obstructed either by the company itself or by other objects proper in themselves; or that the crossing is a much-traveled one, and the noise of approaching trains is rendered indistinct and the ordinary signals difficult to be heard by reason of bustle and confusion incident to railway or other business, or by reason of some such like cause; and that a jury would not be warranted in saying that a railroad company should maintain those extra precautions at ordinary crossings in the country." Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485.

Judge Lamar in this opinion approved the following charge by the trial court:

"So if you find that because of the special circumstances existing in this case, such as that this was a crossing in the city much used and necessarily frequently presenting a point of danger, where several tracks run side by side, and there is consequent noise and confusion and increased danger, that owing to the near situation of houses, barns, fences, trees, bushes, or other natural obstructions which afforded less than ordinary opportunity for observation of an approaching train, and other like circumstances of a special nature, it was reasonable that the railroad should provide special safeguards to persons using the crossing in a prudent and cautious manner, the law authorizes you to infer negligence on its part for any failure to adopt such safeguards as would have given warning," etc.

In this same case Judge Lamar speaks again as follows:

"In a crossing within a city, or where the travel is great, reasonable care would require a flagman constantly at the crossing, or gates or bars, so as to prevent injury; but such care would not be required at a crossing in the country, where but few persons passed each day. The usual signal, such as ringing the bell and blowing the whistle, would be sufficient."

The authorities above cited abundantly sustain the proposition that railway companies owe the public the duty of maintaining a flagman in towns and cities at all crossings which are unusually dangerous or attended with more than ordinary hazard. It will not be contended, of course, that they owe the public this duty at ordinary crossings in the country, where there could be no unusual danger or extraordinary hazard. In cases of that kind, as stated by Justice Lamar in the Ives Case, supra, the law would impose no such duty upon railway companies. Whether or not any given state of facts describing the surroundings of any particular crossing are such as to mark such crossing as one attended with unusual danger or extraordinary hazard is a question solely for the determination of the jury, unless only one conclusion could be drawn therefrom by all reasonable minds.

[2] It is elementary, of course, that where all reasonable minds would draw the same conclusion from a given state of facts, the effect of such a state of facts would become a question of law for the court, rather than a question of fact for the jury. The authorities cited in Michie's Digest of Texas Civil Cases, vol. 14, p. 688, fully sustain this fundamental proposition. Therefore, if the facts in this case might lead to different conclusions by reasonable minds as to whether or not the crossing in question was attended with unusual danger or extraordinary hazard, then it became the duty of the trial court to submit to the jury the issue of negligence in the failure to have a watchman at said crossing.

[3] We think the facts were such that reasonable minds might easily draw different conclusions therefrom, and were amply sufficient to warrant the submission of this charge to the jury. The issue was clearly

raised by the evidence. In fact, by way of parenthesis, we will say that the record contains evidence that the division superintendent and trainmaster of defendant in error had already decided, before this accident, that this crossing was attended with unusual danger, and that the situation would at least demand the installation of bell alarms or signals which would warn people desiring to pass over said crossing of the approach of trains.

A brief analysis of the facts as found by the Court of Civil Appeals shows the following: The town of Pampa had a population estimated at between 800 and 1,500 residents; that the town was filled with transients at the time of this accident, by reason of the fact that it was the harvest season in that territory, and by reason of the further fact that many improvements were going on and new buildings were being erected; that the main line of defendant in error ran east and west through said town; that Cuyler street, which crossed the defendant in error's tracks, was the main business street of the town; that it crossed said tracks, running north and south, and just east of a temporary depot; that practically all of the traffic of the city was upon and over said Cuyler street and across said railroad tracks where this accident occurred; that the crossing was in the switchyards of defendant in error at Pampa; that about 30 to 50 feet north of the main line track was what is known as the house track; that this house track branched off from the main line several hundred feet west of the temporary depot, and paralleled said main line track to the west boundary of Cuyler street; that between the main line and house tracks were many obstructions; that an old box car was being used as a temporary depot, and it was located near the western edge of Cuyler street; that about 50 feet west of this temporary depot was another box car and platform adjacent thereto, used as a temporary freight depot; that a few hundred feet west of Cuyler street was a wellhouse and also a pumphouse; that there were several box cars on the house track; that there was also another railroad track south of the main line track and about 6 feet therefrom, and this was known as the passing track; that at the time of the accident to Mr. Tisdale the work train which struck him was backing into Pampa from the west and using the passing track aforesaid; that it took this track in order that a through freight might pass through Pampa on the main line track; that a new depot was being erected near the site of and across the street from the temporary passenger depot aforesaid.

From aforesaid brief analysis of the facts it is established, among other things, that the crossing in this case was situated in the thickly populated portion of a town. The view of the track was obstructed by the company itself in the erection of temporary freight and passenger depots between the main line track and the house track, and in other ways. The crossing was a much-traveled one, and it was difficult to hear the ordinary signals, by reason of the confusion incident to the operation of trains. Under the authority of the case of Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, this combination of facts was certainly sufficient to justify the trial court in submitting the issue in question to the jury.

The Court of Civil Appeals in its opinion stated that the house track was not shown to be full of cars ordinarily, although there were obstructions to the view at the time of the accident, as claimed by plaintiffs in error. It seems possible that the Court of Civil Appeals may entertain the view that, unless it be necessary at all times to maintain a flagman at a certain crossing, it is not necessary at any time to do so. We cannot concur in any such theory. Conditions surrounding a crossing may and do, change materially from time to time. A flagman might not be required under the law at a certain crossing at one time, and yet it might be negligence to fail to provide one there at another time. The sole question for determination is whether or not at the time of the accident the conditions surrounding the crossing in question rendered it more than ordinarily hazardous or unusually dangerous.

For instance, the jury may well have decided that during the construction of the new depot at Pampa, necessitating the obstruction of the view of the tracks and approaching trains by the use of old box cars as temporary freight and passenger depots, a flagman was necessary, even though it would not have been necessary to maintain a flagman at the crossing in question under ordinary conditions.

[4] Nor can we agree that the proper test in the decision of this question is the population of the town or city. In fact, a review of the authorities shows that the courts have approved the submission of this issue to juries in towns and cities with populations ranging from 3,500 inhabitants to several hundred thousand. The accident in the case of Railway Co. v. Hurdle, 142 S. W. 992, happened at a public crossing in the town of Winnsboro, with a population of 3,500. Other Texas cases have been read in which the accidents occurred in towns like Waxahachie, Terrell, and Del Rio.

In this connection one can easily see that some crossings in the smaller towns and cities might be attended with greater danger than other crossings in the larger cities; in other words, a crossing on the main thoroughfare of a town of 2,000 people, or less, might be much more dangerous than a crossing in the residential section of a city of a half million people. Consequently we cannot

concur in any view based upon the theory that the proper test for the determination of this question is the population of the town or city in which the crossing is located. The sole and only test is whether or not the crossing, in view of its environment and use, was unusually dangerous or attended with more than ordinary hazard at the time of the accident in question.

Our views of the law governing this case have been sustained by many other Texas decisions. In the case of Central Texas & N. W. Ry. Co. v. Gibson, 83 S. W. 862, Justice Talbot uses the following language:

"A view of the railroad track on either side of the street to persons traveling on the street and approaching the crossing in question was obstructed by trees or buildings until a point within about 25 or 30 feet of the track is reached. People are almost constantly passing along the street and over the crossing, and may be expected there at any time of the day. Before the jury was authorized, under the charge complained of, to find that appellant was guilty of negligence in the particular mentioned, they were required to find that the crossing, by reason of its surroundings, was more than usually dangerous and hazardous, and to such an extent that persons of ordinary care engaged in operating railway trains under similar circumstances would have kept a flagman at said crossing. It is true that railway companies are not required to have a flagman posted at every crossing to give warning to travelers about to pass over them of the danger of approaching trains. This duty they owe the public at such crossings only as are, by reason of their location and the circumstances surrounding them, rendered unusually dangerous. In such a case the failure of the railway company to have a flagman at such a crossing becomes a proper and legitimate subject of inquiry and question of culpable negligence in determining the liability of the company for damages at the suit of an injured person by collision with its trains or cars in attempting to pass over such crossing." Affirmed by the Supreme Court, 99 Tex. 98, 87 S. W. 814.

We refer also to the following Texas cases: Railway Co. v. Bratcher, 54 Tex. Civ. App. 10, 118 S. W. 1092; Railway Co. v. Waits, 164 S. W. 870; Railway Co. v. Linney, 163 S. W. 1035; Railway Co. v. Wiggins, 161 S. W. 445; and Railway Co. v. Walker, 171 S. W. 264.

The principles of law announced herein are also followed generally in other jurisdictions. See Illinois Central v. Coley, 121 Ky. 385, 89 S. W. 234; Annaker v. Chicago, etc., 81 Iowa, 267, 47 N. W. 68; Southern Ry. Co. v. Winchester, 127 Ky. 144, 105 S. W. 167; Railway Co. v. Champ (Ky.) 104 S. W. 989; Railway Co. v. Larnard, 161 Fed. 520, 88 C. C. A. 462; and Illinois Central v. O'Niell, 177 Fed. 330, 100 C. C. A. 658.

In view of what has heretofore been said, we conclude that the trial court, under the evidence in this case, properly submitted to the jury the issue as to whether or not defendant in error was guilty of negligence in failing to have a watchman at the crossing when and where Tisdale was killed, and that the Court of Civil Appeals was in error in sustaining the assignments of error attacking said action of the trial court.

[5] Plaintiffs in error contend that, even though the trial court had erroneously submitted to the jury the issue in question, such fact did not require a reversal of the judgment, because three issues of negligence were submitted, and there is nothing in the record to show that the verdict was not returned on one or both of the other issues. We think this contention is unsound. The judgment was based upon a general verdict. It was impossible for the Court of Civil Appeals to know, or for the plaintiffs in error to show, that the verdict was not based upon the charge complained of and held by said court to have been erroneously submitted. Viewing the case as it did, the Court of Civil Appeals did not err in reversing the judgment of the district court. The following authorities are decisive of this question: Railway Co. v. Johnson, 91 Tex. 569, 44 S. W. 1067; Railway Co. v. Greenlee, 62 Tex. 349; Emerson v. Mills, 83 Tex. 388, 18 S. W. 805; Schaff, Receiver, v. Gooch, 218 S. W. 783, 788.

[6] We are urged to affirm the judgment of the trial court in the event we have decided that the issue in question was raised by the evidence and properly submitted to the jury. In view of the action of the Court of Civil Appeals in reversing and remanding the case for reasons shown, we think the Supreme Court is without authority to set aside its judgment and affirm that of the district court. The rule laid down by Chief Justice Phillips in the case of Tweed v. Western Union Telegraph Co., 107 Tex. 247, 166 S. W. 696, 177 S. W. 957, and authorities there cited, is clear and conclusive upon this point.

Therefore we recommend that the judgment of the Court of Civil Appeals be affirmed, and the cause remanded to the district court for further proceedings in conformity with this opinion.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.