## GULF, C. & S. F. RY. CO. v. PICARD.

### No. 3722.

Court of Civil Appeals of Texas. Beaumont.

Dec. 5, 1940.

Rehearing Denied Jan. 22, 1941.

Terry, Cavin & Mills, of Galveston, and C. T. Duff, of Beaumont, for appellant.

J. A. Veillon and D. F. Sanders, both of Beaumont, for appellee.

O'QUINN, Justice.

This is an appeal from a judgment awarding damages to appellee caused by a collision between an automobile (police car) in which he was riding and a freight car of appellant standing on and over a street crossing in the City of Beaumont, Texas. The several acts of negligence charged against appellant were fully alleged. Appellant answered by general demurrer, general denial, and specially that appellee was guilty of contributory negligence that caused and contributed to his injury.

The case was tried to a jury upon special issues, in answer to which they found: (a) That appellee sustained an injury in the collision; (b) that the conditions surrounding the crossing on the occasion in question were such as to render the crossing more than ordinarily dangerous as a night-time crossing; (c) that appellant's employee in charge of the switching operations knew of the conditions surrounding the crossing at the time; (d) that in the exercise of ordinary care appellant would have stationed a flagman on the south side of the crossing on the occasion in question; (e) that appellant's failure to have a flagman to flag traffic at the crossing at the time was negligence; (f) that such negligence was a proximate cause of appellee's injury; (g) that in the exercise of ordinary care appellant would have placed a light on the south side of the gondola car standing on the crossing, on the occasion in question; (h) that the failure of appellant to have a

light on the south side of the gondola car was negligence; (i) that such negligence was a proximate cause of appellee's injury; (j) that appellant's employee in charge of the switch engine on the night in question failed to ring the engine bell; (k) that such failure was negligence; (1) that such negligence was a proximate cause of appellee's injury; (m) that the accident was not unavoidable; and (n) that appellee was entitled to damages in the sum of $2,500. In answer to special issues, they acquitted appellee of all alleged acts of contributory negligence.

On the answers of the jury, judgment was rendered for appellee in the sum of $2,500. Motion for a new trial was overruled, hence this appeal.

Appellant's first four assignments of error, in effect, urge that the court erred in refusing its motion for an instructed verdict because the evidence showed that appellee was guilty of contributory negligence, as a matter of law, which negligence caused or contributed to his injury, wherefore judgment should have been in its favor that appellee take nothing by his suit.

The assignments read:

"Proposition No. 1.

"The plaintiff having admitted that he was thoroughly familiar with the streets and highways of the city of Beaumont, and particularly North Pearl Street, that he knew of the location of the railroad track crossing said street, that when he left the police station on the night in question he knew of the existing weather conditions, fog, and limitation of vision as a result, the wet and slick condition of the street, and that the speed at which the automobile was being driven was such that the automobile could not be stopped within the range of vision, and the plaintiff having further admitted that as he approached the crossing in question he was not looking ahead, but was looking off to the side, and that when he did look ahead he immediately saw the train over the crossing, but they were then so close to same that the automobile could not be stopped, the court erred in submitting the case to the jury and in not instructing the jury to return a verdict in favor of the defendant, as requested by defendant.

"Proposition No. 2.

"Where a party approaches a known railroad crossing on a dark and foggy night, with full knowledge that said crossing may be occupied by a railroad train, the speed of his approach being such that he could not stop his automobile within his range of vision, he is guilty of negligence as a matter of law.

"Proposition No. 3.

"It being admitted in this case that the plaintiff and the driver of the automobile were on a joint mission, that they were driving down one of the streets in the city of Beaumont, approaching a known railroad crossing, that the night was foggy, and as a result the streets were slick, and that said automobile was being driven at such a speed that same could not be stopped within the range of vision furnished by the headlights on said automobile, and there being no claim made by the plaintiff that as he approached the railroad crossing he anticipated any warning to be furnished him by wigwag signal device of any kind or watchman, and it being conclusively established that but for the speed of said automobile said collision would not have occurred, the court erred in failing to grant this defendant's motion for judgment, said motion being based on the jury's finding that the automobile in question was being driven at such a speed that it could not be stopped within the range of vision of those in said automobile."

"Proposition No. 4.

"Where one riding in an automobile acquiesces in a speed which, under existing weather conditions, is such that the automobile could not be stopped within the range of vision, and as a result of such speed the automobile is driven into the side of a train, same constitutes negligence as a matter of law and the trial court in this instance erred in overruling this defendant's motion for judgment, said motion being based on the jury's finding that the automobile in which plaintiff was riding was being driven at such a speed."

Briefly the facts are: On the night (about midnight) of January 17, 1938, appellee, who was a member of the police force of the City of Beaumont, together with two other policemen, were in a police car travelling north on Pearl Street. Said street is a paved street running north and south. This street after leaving the business section on what is known as North Pearl Street crosses a switch track owned and operated by appellant at the intersection of North Pearl Street and Long Av-

enue. The crossing is practically at grade and at right angles. As the crossing is approached from the south going north, the territory lying south of the railroad track and on either side of the street is vacant. Some 400 feet south of the crossing there is a brick structure which is referred to in the record as an ice cream plant. The night was foggy, described by appellee and his witnesses as very foggy, and by appellant's witnesses as slightly foggy until some time after the accident when it became real foggy. The street was wet and slippery because of the fog. When the car in which the policemen were travelling reached the point where North Pearl Street and Long Avenue intersected (the railway switch was on Long Avenue) there was a gondola freight car standing on the switch track across North Pearl Street. It was a part of a four-car section of the freight train which was switching at the time (throwing the gondola car into a junk yard at or very near to the crossing for the purpose of being loaded with junk iron for exportation). At the time of the accident the freight cars with the engine farthest removed from the street was standing still. The gondola car was a dark red color. There was no lights on or about the gondola car, nor at the street crossing other than a city light up on a light pole on the northwest corner of the crossing. This was on the side of the street opposite from the approach of the police car. There was near the crossing a railroad sign composed of a cross on an upright timber which bore the words: on one bar of the cross "Railroad Crossing," and on the other "Look out for cars." This, too, was on the opposite side from the police car. Appellee testified that the visibility was very poor because of the fog; that as they approached the crossing they could see lights of automobiles coming toward them from the other side; that the crossing appeared to be clear. The gondola car with which the automobile collided was an open car, that is it did not have any top, and stood some eight feet and eleven inches from the pavement of the street to the top of the car; from the pavement to the bottom of the car was some three feet. All the space between the bottom of the gondola car to the pavement was open except that occupied by the wheels and the springs on which they were placed—some nine feet and six inches at or near the end of the car. The gondola car was forty feet long; that left twenty-one feet of open space under the car of three feet in

height. The automobile lights seen by appellee and his companions shone under the gondola car, which they testified caused them to think the crossing was clear. Appellee testified that as they approached the crossing he was directing his flash on a safe to be seen in the window of the ice cream factory off to the left; that it was a part of their duty as night patrolmen to inspect doors and windows to ascertain if any depredations to the premises had occurred. They were all members of the night cruising or patrol force of policemen; that when he glanced back to the street he discovered the gondola car standing in the street within some fifteen feet of their automobile when he instantly called the attention of the driver of the automobile—his fellow policeman—to the freight car, and that the driver immediately slammed on the brakes of their automobile and veered to the left in an effort to avoid striking the gondola car, but could not do so, and their automobile crashed into the side of the freight car injuring him. The automobile was travelling about 15 or 20 miles per hour. It could, under the circumstances, have been stopped within some 25 or 30 feet. It was testified that because of the fog they could not have seen the gondola car 25 or 30 feet away, but could have seen same within "just about 15 feet." There was no flagman or brakeman at the crossing, and no light or other thing designed to call attention to the car on the street. Appellee testified that he was familiar with both streets and their crossing, and that he had travelled over the crossing almost every day for more than a year.

On these facts issues respecting contributory negligence were submitted to the jury, and all, except one, answered in his favor. In answer to special issue 16 the jury found that the car in which appellee was riding as it approached the railway crossing was being driven at such rate of speed that it could not have been stopped within the range of vision of its headlights, but in answer to special issue 17 they found that this was not negligence. But appellant insists that the evidence in several particulars shows appellee to have been guilty of contributory negligence, as a matter of law, contrary to the findings of the jury, and that such negligence contributed to his injury. Contributory negligence, generally, is a question of fact for the jury, and it is only where the facts are such that reasonable minds can draw but one conclusion

from the facts that contributory negligence as a matter of law exists. If reasonable minds can draw different conclusions from the facts as to negligence, then the question is one for the jury. Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063; Western Development Corp. v. Simmons, Tex.Civ.App., 124 S.W.2d 414, writ refused; LeMaster v. Fort Worth Transit Co., Tex.Civ.App., 142 S.W.2d 908, writ was granted with notation that the court inclined to believe that contributory negligence as a matter of law was not shown by the record; Beaumont, etc., Railroad v. Richmond, Tex.Civ.App., 78 S.W.2d 232, writ dismissed. The assignments are overruled.

Special issue No. 2 submitted to the jury reads:

"Do you find from a preponderance of the evidence that the condition surrounding the crossing in question were such as to render that crossing more than ordinarily dangerous as a night-time crossing on the occasion in question?

"In connection with the foregoing special issue, you are instructed that by the term 'more than ordinarily dangerous' is meant that the crossing would not be more than ordinarily dangerous unless its condition, due to the darkness and weather conditions, was such that a reasonably prudent person could not by the exercise of ordinary care use same with safety."

The jury answered "yes," that is that the crossing, under the conditions surrounding the crossing at the time rendered it "more than ordinarily dangerous" as a nighttime crossing. Appellant by its fifth and sixth assignments of error challenges the sufficiency of the evidence to raise the issue, and therefore the court erred in submitting same to the jury. We overrule the assignments. The weather was very foggy, the visibility poor, the crossing was at the intersection of two much travelled streets, the gondola car was dark red in color, had a space of at least three feet by twenty-one feet open between the pavement and the bottom of the car through which lights of automobiles approaching from the opposite side could be seen, giving the appearance, under the circumstances, of an open crossing, the fog was so heavy and close to the ground that the gondola car could be seen only when close up—some fifteen feet—it was in the nighttime, about midnight, and according to the testimony automobiles were then seeking to make the crossing. The issue was not of whether the crossing was in its nature one of more than ordinary danger, but whether under the conditions then surrounding it made the crossing at that time more than ordinarily dangerous. In fact the explanation given the jury of the issue plainly stated that the term meant "that the crossing would not be more than ordinarily dangerous, unless its condition, due to the darkness and weather conditions, was such that a reasonably prudent person could not by the exercise of ordinary care use the same with safety." This meant that the query went to its then use considering its surrounding condition. We think that the crossing here in question would not ordinarily generally be considered "more than ordinarily dangerous," but under the special conditions and surroundings existing at the time of the accident, the evidence raised the issue whether it was then more than ordinarily dangerous, and these conditions being known to the employees operating the switching of the cars, whether in the exercise of ordinary care, they should have stationed a flagman or warning light at the gondola car when they left it standing across the street to give warning to any approaching travellers attempting to cross the street while the car blocked its passage. The evidence raised the issue whether the crossing under the conditions, was temporarily more than ordinarily dangerous for public use. Tisdale v. Panhandle & S. F. Ry. Co., Tex.Com.App., 228 S. W. 133, 136, 16 A.L.R. 1264. In the case cited, Judge Powell speaking for the Supreme Court, in passing upon this question, said:

"It seems possible that the Court of Civil Appeals may entertain the view that, unless it be necessary at all times to maintain a flagman at a certain crossing, it is not necessary at any time to do so. We cannot concur in any such theory. Conditions surrounding a crossing may and do change materially from time to time. A flagman might not be required under the law at a certain crossing at one time, and yet it might be negligence to fail to provide one there at another time. The sole question for determination is whether or not at the time of the accident the conditions surrounding the crossing in question rendered it more than ordinarily hazardous or unusually dangerous."

The Supreme Court approved this holding. In Chicago, R. I. & G. Ry. v. Zum-

walt, 239 S.W. 912, 916, Judge Gallagher, speaking for the Supreme Court, said: "The duty of the plaintiff in error to exercise ordinary care to enable the traveling public to pass over the crossing in safety was measured by the situation. Its duty to meet such situation arose when the special hazard arose and continued while such hazard continued."

Appellant's seventh assignment of error complains that the court erred in refusing to give its special requested issue reading: "Do you find from a preponderance of the evidence that the plaintiff, Lee Picard, failed to look ahead to see if said crossing was blocked, while at such a distance from the crossing that the automobile could have been stopped before reaching same?"

■ Refusing the charge was not error. The court in his main charge properly and sufficiently submitted the question of appellee's failure to keep a proper look out to see whether the crossing was obstructed. This was answered in appellee's favor. Trochta v. M., K. & T. Ry. Co., Tex.Com. App., 218 S.W. 1038. The holding in the cited case has been followed in numerous decisions by our Supreme Court.

■ We sustain appellant's assignment against the finding of the jury that it was negligence on the part of appellant to not ring the engine bell while the car was left standing on the crossing. We do not think the statute, Vernon's Ann.Civ.St. art. 6371, requires the bell to be rung while the train is standing still. The statute requires the ringing of the bell to advise of the approach of the train, and not of its presence when standing still. Texas & N. O. Ry. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741, writ refused. However, we do not think the submission of the issue of failure to ring the bell was prejudicial to appellant.

■ The contention of appellant that the court erred in submitting to the jury the issue of whether it was negligence on the part of appellant in failing to have a flagman stationed on the south side of the crossing at the street intersection where the accident occurred, because, it says, if such duty rested on appellant it would likewise have been its duty to have a flagman on the north side of the crossing, and further, that the issue as framed was tantamount to instructing the jury that the flagman should have been placed on the south side only, leaving to them for determination the issue of the necessity of a flagman, is not well taken. Appellee was approaching the crossing from the south, and thus for a flagman to have signalled him, he would of necessity have to be on the south side. The purpose of the issue was to determine whether, under the circumstances, there should have been a flagman stationed at the crossing, and whether it was negligence on the part of appellant to fail to place a flagman at the crossing. The issue, under the facts, was proper, and was not calculated to mislead or confuse the jury.

■ By its ninth and tenth assignments of error, appellant challenges the verdict of the jury awarding appellee $2,500 as excessive. The record discloses that when the automobile in which appellee was riding collided with the gondola car of appellant he was knocked unconscious; that he was carried to a hospital; that he was in the hospital four days, and then went home, stayed in bed there two weeks; that he then went back to work, worked one night and had to lay off again for one more night, went back to work the third night and had to lay off again for another night. (He was on the night police patrol force.) He was at work at the time of the trial. One of his little fingers (there was some conflict as to which—appellee saying it was the right, and his physician who treated him saying it was the left) was broken in a triangular shape in two places. His neck swelled up on the right side. At the time of the trial the swelling had disappeared. He suffered a soreness in his side and thought he had appendicitis. The doctors said it was from sore muscles. When layed off from work the calf of one leg got sore and this continued for two weeks. His head was skinned and his chest and leg were also bruised and skinned. He testified that his head was alright at the time of the trial. He testified that his little finger still gave him trouble when he tried to grasp his pistol; that this hand would not entirely close. At the time of the trial he was still working for the city and in the same capacity as before the accident. The city continued to pay him his salary all the time he was off duty. There is no evidence of hospital or doctor's bills. The jury gave him $2,500. After careful consideration of all the evidence, we conclude that the judgment is excessive in the sum of one thousand dollars. If appellee will remit that sum within ten days leaving the

judgment for fifteen hundred dollars, the judgment will be affirmed for that amount, but if no remittitur is filed, then the judgment will be reversed and the cause remanded for another trial. Affirmed on condition of remittitur.