**ATTEBERY et al. v. HENWOOD.**

No. 6080.

Court of Civil Appeals of Texas. Texarkana.

Nov. 25, 1943.

Rehearing Denied Jan. 6, 1944.

Lincoln & Harris, of Texarkana, for appellants.

Ramey, Calhoun, Marsh, Brelsford & Sheehy, of Tyler, for appellee.

JOHNSON, Chief Justice.

This suit was brought by R. J. Attebery and wife, Susan, against Berryman Henwood, trustee, St. Louis Southwestern Railway Company of Texas, debtor, to recover damages alleged to have been sustained by plaintiffs on account of the death of their son Wesley Attebery who was killed about 5:45 o'clock on the morning of November 8, 1941, when a gravel truck, driven by C. C. Ward, on which the deceased was riding as a passenger or guest, was struck by one of defendant's pas-

senger trains, about 10 miles west of Texarkana in Bowie County, Texas, at the intersection of a public road and defendant's railroad, known as the Trexler crossing. Judgment was entered in favor of defendant upon a jury verdict. Plaintiffs have appealed.

Appellants' Points 1, 2, 3 and 4 raise the contention that there is an irreconcilable conflict in answers of the jury to special issues, rendering the verdict insufficient as the basis for judgment. The jury found, in substance, that defendant was negligent in failing to sound the whistle and in failing to ring the bell at a distance of 80 rods from the crossing, and in failing to keep the bell ringing from said distance until the train reached the crossing; and that the defendant was negligent in operating the train at a speed of 60 miles per hour immediately before the collision. The jury found further that C. C. Ward, driver of the truck, was negligent in failing to look and in failing to listen for a train before driving upon the crossing; and that the deceased was negligent in failing to look and in failing to listen for a train before Ward drove the truck upon the crossing. But the jury further found that none of said acts of negligence on the part of defendant or Ward or the deceased was a proximate cause of the collision. The jury further found that it was not an unavoidable accident. The contention is made that the finding, that it was not an unavoidable accident, is in conflict with the findings that the accident was not caused by the negligence of the defendant or of Ward or of the deceased, in the acts inquired about in the issues submitted.

The record shows that not *all* the issues of negligence raised by the testimony were submitted to the jury. Appellant pleaded, and, in our opinion, the testimony was sufficient to raise the issues as to whether it was an extra-hazardous crossing, at which appellee had negligently failed to provide a flagman, or some mechanical warning device. Such issues were not submitted to the jury. The jury may have concluded that such was a proximate cause of the accident. So, the fact that the jury found that it was not an unavoidable accident and failed to find that the accident was caused by any of the acts inquired about in the issues submitted, does not in the facts of this record present an

irreconcilable conflict in the findings of the jury. The assignment is overruled.

Appellants' fifth and sixth points raise the contention that the court erred in refusing to submit their requested special issues 4, 5, 6, 7, 8 and 9, inquiring whether appellee had failed to place a flagman at the crossing or to equip it with a bell, gong, or other mechanical device to warn persons about to use the crossing of the approach of trains; and was such failure, negligence, and a proximate cause of the collision. Appellee makes the counter-contention that refusal to submit said requested special issues was not error: (1) Because there was no evidence tending to show that it was an extra-hazardous crossing; and (2) because there was no issue submitted, or requested, inquiring whether the crossing was extra hazardous.

Appellants' witnesses testified, in substance, that the Trexler crossing where the accident occurred is located about 10 miles west of Texarkana, in Bowie County, Texas, at a point where appellee's railroad runs east and west; that the Shipley Gravel Pit is located immediately south of the railroad about ¼ mile east of the Trexler crossing; that from the Shipley Gravel Pit west the public road closely parallels the railroad to the approach of the crossing, where it makes a sharp right-hand turn to the north, and thence passes over the railroad track; that at the point of turning from west to north, at the approach of the crossing, the public road is located a distance estimated from 45 to 65 feet south of the rails; and that the public road at said point is about 20 feet lower than the railroad track and continues to become lower back east to, or near to, the gravel pit; that the gravel truck in which deceased was riding at the time he was killed had traveled, from the Shipley Gravel Pit, west to the approach of the crossing, where it stopped or nearly stopped, turned to the north and was passing over the crossing, when hit by one of appellee's passenger trains traveling west. At the crossing there is nothing to obstruct a person's view of a train approaching from the east for approximately 80 rods, unless it be the height of the railroad embankment above the public road, and a "cut", as indicated by the following testimony: "A man in a truck or vehicle traveling west down the Shipley road from the Shipley pit to this crossing and turning

north over the crossing can cast his eyes to the right or east, and see plumb down to the Shipley house. You can see to the Shipley house, but you might not see a train plumb down there because it comes out of a cut down there. It is approximately less than a quarter of a mile to that cut. I can see that cut in this photograph, and I can see where the train would come, and it might be just as straight as a crow can fly plumb on through. From the intersection south of the railroad or from the turn south of the railroad to the crossing, this distance of 45 to 65 feet, the view of the track to the right is plain plumb on down there, but not plumb on down to the Shipley house, because you are down longer than the railroad track at that time, and that is why you can't see it."

The testimony further shows that at the time and for a month or more prior to the accident about 50 trucks were engaged in hauling gravel from the Shipley Pit to two large War Plants being constructed north of the Trexler crossing where the accident occurred; that each truck made an average of 14 loads (the 50 trucks making a total of approximately 1400 single trips) per day over this crossing, beginning about 4 or 4:30 o'clock each morning; that in addition to said gravel trucks the travel over this crossing by other motor vehicles was "heavy"; that said War Plants employed "thousands" of people, many of whom passed over this crossing in going to and from their work; that for several weeks prior to the accident the traffic over this crossing was in a "congested" condition. Appellee's engineer operating the train involved in the accident testified that four passenger trains, making eight passages, and "lots" of freight trains, passed over this crossing each day. The engineer and fireman further testified to the effect that they had been passing this point twice each day at approximately 5 o'clock a. m. and 10 o'clock p. m. and that they had never seen a truck pass over this crossing or any character of traffic using it.

No flagman was stationed at the Trexler crossing, nor was it equipped with any mechanical device to give warning of the approach of trains. No issue was submitted, and none requested, inquiring whether it was an extra-hazardous crossing.

In our opinion, the testimony was sufficient to raise the issues, to be determined by the jury, as to: (1) Whether it was an extra-hazardous crossing; (2) whether appellee was negligent in failing to provide it with a flagman or some mechanical warning device; and (3) whether such negligence, if any, was a proximate cause of the collision. But we believe that, as the testimony only raises a jury question as to whether it was an extra-hazardous crossing, the submission and an affirmative finding on that issue was essential to a recovery in the respect here sought. It was a controlling issue, a separate and distinct inquiry of a primary fact necessary to be established, and without which, culpable negligence cannot be shown for failure to provide the crossing with such extraordinary means of safety. Expressed in other words, it was the basic fact upon which the relevancy or effect of the facts sought to be established by the special issues requested by appellant are, in law, conditioned or limited. Wichita Falls & Okla. Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79; Rule 279, Texas Civil Procedure. So, because railroad companies are not charged with the duty to provide a flagman or a mechanical warning device at *every* crossing. Such extraordinary means of safety are required only at particular crossings which are shown to be more than ordinarily dangerous, one attended with unusual or extra hazards, "a place so peculiarly dangerous that prudent persons cannot use the same with safety, unless extraordinary means are used to protect such place." Missouri, K. & T. Ry. of Tex. v. Long, Tex.Com.App., 299 S.W. 854, 855; Tisdale v. Panhandle & S. F. Ry. Co., Tex.Com.App., 228 S.W. 133, 135, 16 A. L.R. 1264. "Whether or not any given state of facts describing the surroundings of any particular crossing are such as mark such crossings as one attended with unusual danger or extraordinary hazards is a question solely for the determination of the jury, unless only one conclusion could be drawn therefrom by all reasonable minds." Tisdale v. Panhandle & S. F. Ry. Co., supra.

The alleged fact that it was an extra-hazardous crossing being an ultimate or primary fact upon which the legal effect of the facts sought to be established by the requested issues is dependent, and it being a jury question not submitted or requested, we do not believe that reversible error is shown in refusal to submit

the requested issues. The assignment is overruled.

■ Appellants' seventh point complains of the action of the trial court in refusing their requested special issue inquiring whether the employees in charge of the train in question failed to keep a proper lookout for persons about to use the crossing, and the accompanying issues as to negligence and proximate cause. The testimony in substance shows that the truck traveled at a speed of approximately 35 miles per hour from the gravel pit west to the approach of the crossing, where it stopped or nearly so, shifted into the lowest gear and was proceeding over the crossing at about three or four miles per hour, and that the front wheels had passed over the north rail when the truck was hit near the rear end by the train traveling west. The engineer and fireman both testified that they were sitting in their respective seats in the cab, the engineer on the right-hand side and the fireman on the left-hand side. The fireman testified that he saw the truck traveling in the same direction as the train; that when the truck reached the approach to the crossing, it appeared to stop and immediately started up the embankment toward the track; that the train was then about 400 feet from the crossing; that he screamed at the engineer to "big-hole" it, and that the engineer immediately applied the emergency brakes. The engineer testified to the effect that upon the fireman's signal he immediately applied the emergency brakes and used all other means of stopping the train as quickly as possible, but that the train traveled some distance west of the crossing before it stopped; that from where he was sitting in the cab it was impossible to see the approaching truck, and that he did not see it until its front wheels passed over the north rail.

The testimony, the substance of which is stated above, does not raise an inference that the operators of the train failed to keep a proper lookout. It shows that the fireman did in fact see the truck some distance before it reached the approach to the crossing and that he was observing its movements at the time it stopped in making the turn to go over the crossing. Clearly the accident was not caused by failure of the operators of the train to keep a proper lookout. St. Louis S. W. Ry. of Tex. v. Hill, Tex.Civ.App., 13 S.W.2d 420, writ refused.

Appellants have made assignments of error in addition to those we have discussed, which we have reviewed, and find that none of them present reversible error.

The judgment of the trial court will be affirmed.

HALL, Justice (dissenting).

I am unable to concur in the majority opinion filed herein ordering an affirmance of the judgment of the trial court. I am in agreement with the statement of the case and the clear and convincing reasoning of the Chief Justice in all particulars except in respect to appellants' points 5 and 6 having to do with the failure of the trial court to submit to the jury appellants' requested issues 4, 5, 6, 7, 8, and 9. In my opinion, these issues should have been submitted to the jury, and for the trial court's failure to do so the judgment should be reversed and the cause remanded.

These issues are in proper form and, deleted for brevity, are: (4) Did the railway company fail to maintain a mechanical device at the crossing? (5) Was such failure negligence? (6) Was such negligence the proximate cause of deceased's death? (7) Did the railway company fail to maintain a watchman at the crossing? (8) Was such failure negligence? (9) Was such negligence the proximate cause of the death of deceased? The effect of the holding in the majority opinion, concisely stated, is: (1) Affirmative answers to above special issues would not form sufficient basis for judgment for appellants upon the ground of negligence in failing to maintain a flagman or mechanical signal at the crossing; (2) having requested the submission of all the several related issues comprising this particular ground of recovery except one, appellants thereby completely waived such ground, which we all agree was amply raised by the pleadings and evidence. As I interpret them, the decisions cited and relied on in the majority opinion do not sustain such conclusions. Tisdale v. Panhandle & S. F. Ry., Tex. Com.App., opinion adopted, 228 S.W. 133, 134, 16 A.L.R. 1264, is one of the cases cited by the majority. In that case our Supreme Court approved the judgment of the trial court based upon a finding by the jury that the railway company was negligent in failing to maintain a flagman at the crossing without the additional jury finding that the crossing was extra hazardous.

The following quotations from the Tisdale case, in my opinion, are controlling here:

"The sole question for determination in this connection by this court is whether or not the trial court erred in submitting the aforesaid issue to the jury. There was no objection to the form of the charge used by the trial court in doing so. *It was in the usual form, the court asking the jury to determine whether or not an ordinarily prudent person, under the same or similar circumstances, would have provided a flagman at said crossing.* * * *

"It is elementary, of course, that where all reasonable minds would draw the same conclusion from a given state of facts, the effect of such a state of facts would become a question of law for the court, rather than a question of fact for the jury. The authorities cited in Michie's Digest of Texas Civil Cases, vol. 14, p. 688, fully sustain this fundamental proposition. *Therefore, if the facts in this case might lead to different conclusions in reasonable minds as to whether or not the crossing in question was attended with unusual danger or extraordinary hazard, then it became the duty of the trial court to submit to the jury the issue of negligence in the failure to have a watchman at said crossing.*

"We think the facts were such that reasonable minds might easily draw different conclusions therefrom, and were amply sufficient to warrant the submission of this charge to the jury. The issue was clearly raised by the evidence. * * *

"The crossing was a much-traveled one, and it was difficult to hear the ordinary signals, by reason of the confusion incident to the operation of trains. Under the authority of the case of [Grand Trunk] Railway Co. v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485, this combination of facts was certainly sufficient to justify the trial court in submitting the issue in question to the jury. * * *

"*In view of what has heretofore been said, we conclude that the trial court, under the evidence in this case, properly submitted to the jury the issue as to whether or not defendant in error was guilty of negligence in failing to have a watchman at the crossing when and where Tisdale was killed, and that the Court of Civil Appeals was in error in sustaining the assignments of error attacking said action of the trial court.*" (Italics mine.)

Under the above holding, the evidence in this record such as the physical condition of the crossing, the unusual number of trucks passing over it during each 24 hours, the number of trains passing over the crossing each day, and the speed with which they were operated, relates solely and directly to the alleged negligence of the railway company in failing to maintain a flagman or mechanical device at said crossing, and is amply sufficient to raise the issues requested.

But this dissent is founded upon stronger grounds, if need be, than the clear precedent set by the Tisdale case. The issues requested by appellants, collectively, submitted the distinct ground of recovery based upon the alleged negligence of the railway company in failing to maintain a flagman or mechanical warning device at said crossing. In the recent case of Wichita Falls & Okl. Ry. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, 80, our Supreme Court has, in a comprehensive opinion, set forth the matter and manner of submitting special issues in order to settle "the confusion that has resulted from the construction of Art. 2190." Concluding said opinion and, as illustrative of the holding therein, it is said: "A fair and commendable practice would be for the trial court to submit substantially the essential component elements of an issue. *As an illustration, we will take a negligence case. As a general rule, in such a case the four component elements of the ultimate issue must be shown: (1) that the defendant did an act, (2) that the act was an act of negligence, (3) that the act of negligence was the proximate cause of the plaintiff's damage, and (4) that the plaintiff was damaged. But if the trial court should fail to submit one or more of such component elements of an ultimate issue, such component element, or elements, not submitted and not requested to be submitted, are not waived, and the court may find the unsubmitted element, or elements, in such way as to support the judgment rendered by him, if there is evidence to support such finding.*" (Italics mine.)

The opinion in the Pepper case, supra, expressly approved a judgment of the trial court under authority of R.S. Article 2190 entered upon a jury verdict where part of the issues relating to a distinct ground of recovery, raised by the evidence, were omitted, there being no objection to the

omission and no request for submission. By high authority it is said that the case last cited, together with Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084, and North v. Atlas Brick Co., Tex.Com.App., 13 S.W.2d 59, form the basis of Rule 279, Texas Rules of Civil Procedure (Franki p. 296).

Paragraph 2 of Rule 279 is: "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived; but where such ground of recovery or of defense consists of more than one issue, if one or more of the issues necessary to sustain such ground of recovery or of defense, and necessarily referable thereto, are submitted to and answered by the jury, and one or more of such issues are omitted, without such request, or objection, and there is evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted issue or issues in support of the judgment, but if no such written findings are made, such omitted issue or issues shall be deemed as found by the court in such manner as to support the judgment."

As said before, the majority opinion holds that the issue (not requested or submitted) with respect to whether the crossing was an extra-hazardous one, singly and alone, is an independent ground of recovery and that appellants waived said ground by failing to request its submission. Such conclusion can mean nothing more or less than that an affirmative answer to this issue by the jury unaided by affirmative answers to related issues would form the basis for a judgment for appellants. Just what judgment could the trial court have rendered for the appellants upon the jury's answer that the crossing was an extra-hazardous one? Appellants could derive no benefit from such a judgment except the judicial information imparted by the jury's affirmative finding. Such a holding by the majority, in my humble opinion, is in the very teeth of both the Pepper case and Rule 279, Texas Rules of Civil Procedure.

But conceding for the sake of argument, that the omitted issue with respect to the hazardous condition of the crossing was a proper one to be submitted to the jury together with those issues requested by appellants, still its omission under the record here would not work a reversal based upon answers to the requested issues had they been submitted, for the reason that under the holding of the Pepper case, supra, and Rule 279, "the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted issue or issues in support of the judgment, but if no such written findings are made, such omitted issue or issues shall be deemed as found by the court in such manner as to support the judgment." In a negligence case no single issue in a group of issues submitting a distinct ground of recovery outranks the others, but they are all of equal dignity, and a failure to request the submission of one does not waive the ground of recovery. In my opinion, the trial court committed error in refusing to submit to the jury the issues requested by appellants, and for this reason the judgment should be reversed and the cause remanded for another trial. So believing, I earnestly register this, my dissent.

### On Motion for Rehearing.

JOHNSON, Chief Justice.

Appellants in their motion for rehearing in effect contend, as stated by Justice Hall in his dissent, that "the majority opinion holds that the issue (not requested or submitted) with respect to whether the crossing was an extra-hazardous one, singly and alone, is an independent ground of recovery * * * and that an affirmative answer to this issue by the jury unaided by affirmative answers to related issues would form the basis for a judgment for appellants." We do not think that the majority opinion is susceptible of the construction so placed upon it. We held that since the testimony raised a disputed issue as to whether or not it was an extra-hazardous crossing, "the submission and an affirmative finding on that issue was essential to a recovery." Such holding, that a jury finding that it was an extra-hazardous crossing was essential to recovery, is not, as contended, equivalent to a holding that such establishment of that fact alone would authorize a recovery. Our holding that establishment of the alleged fact that it was an extra-hazardous crossing, was essential in order to warrant

a recovery, is based upon the decisions of our courts holding that railroad companies (in the absence of a statute or ordinance directing them to do so) are not required to provide a flagman or mechanical warning device at *every* crossing, but only at extra-hazardous crossings. In addition to the authorities cited in the majority opinion, see McMahan v. Texas & N. O. Ry. Co., 138 Tex. 626, 161 S.W.2d 70; Texas & N. O. R. Co. v. Beard, Tex.Civ.App., 91 S.W.2d 1080, writ refused; Texas & N. O. R. Co. v. Compton, 135 Tex. 7, 136 S.W.2d 1113, 1115. In the last-cited case it is said: "Another ground relied upon was the failure of the railroad company to use extraordinary means to give warning, such as to equip its freight cars with lights and have same burning at night, to equip its crossing with signal bells or lights or to have a watchman stationed thereat. Negligence cannot be based upon such omissions, for the crossing was not extra-hazardous and therefore no duty was cast upon the railroad company to observe these extraordinary precautions."

Our holding that establishment by a *jury finding* of the alleged fact that it was an extra-hazardous crossing, was essential to a recovery, is based upon the conclusion that the issue in question is not the character of issue that may be made the subject matter of a presumed finding by the trial judge in a case being tried before a jury, as provided for in Rule 279, Texas Rules of Civil Procedure. We arrived at such conclusion from the fact that such issue was not an element of appellants' "ground of recovery" nor was it "necessarily referable thereto," but that it was a separate and independent inquiry of a primary or basic fact, apart from the grounds of recovery and not necessarily referable thereto. The alleged ground of recovery is not the railroad company's act of maintaining the alleged extra-hazardous crossing, but in negligently failing to provide such crossing with a watchman or mechanical warning device, and that such negligence was a proximate cause of the fatal accident.

In the majority opinion we used the word "ultimate" in describing the character of the issue here in controversy, as to whether it was an extra-hazardous crossing. The word as used is thought to be inapplicable and may be misleading, and it will be stricken from the opinion.

The motion for rehearing is overruled.