**B. M. JINKS and R. N. Nabors d/b/a J. & N. Construction Company, Appellants,**

v.

**CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, Appellee.**

No. 16226.

Court of Civil Appeals of Texas.

Dallas.

July 19, 1963.

Wilbur T. Knape, Dallas, for appellants.

Scurry, Scurry & Hodges, Dallas, and Thompson, Walker, Smith & Shannon and Joe E. Gracey, Fort Worth, for appellee.

DIXON, Chief Justice.

Suit for damages arising out of a truck-train collision was instituted by William H. Dedmon, the truck driver, and R. N. Nabors, alleged to be the owner of the truck, against Chicago, Rock Island and Pacific Railroad Company, hereinafter called Railroad.

In addition to its answer Railroad filed a counterclaim and cross-action against Nabors and B. M. Jinks, impleading the last named party as a joint owner of the truck along with Nabors, the two doing business under the name of J. & N. Construction Company.

A Jury returned a verdict favorable to Railroad in the main suit and also on the counterclaim and cross-action. A judgment for $8,464.56 was rendered in favor of Railroad against Jinks and Nabors, the judgment also providing that Dedmon and Nabors take nothing in their suit against Railroad. Only Jinks and Nabors have appealed.

In their first point on appeal appellants charge that there was no evidence to support the jury's answer to Special Issue No. 3 to the effect that the engineer on the train did not fail to keep a proper lookout.

The collision occurred about half way between the cities of Dallas and Fort Worth. The train was traveling east towards Dallas. The truck was traveling south along a dirt road towards a gravel pit leased by appellants.

About 100 feet north of the track was an east-west line of trees paralleling the track. There is testimony that at a point about 125 feet north of the tracks the visibility to the west (from which direction the train was coming) for the truck driver was between 700 and 800 feet. There is testimony that the truck could first be seen from the train when the truck emerged from behind the line of trees about 100 feet north of the tracks.

The train was traveling about 70 miles per hour, which was within the speed limit at that point. The truck according to Dedmon himself, the driver, was traveling about 8 or 10 miles per hour, and could have been stopped within 2 or 3 feet. He did not stop.

Clymer, the fireman on the train, estimated that the train was about 650 feet from the crossing when he and the engineer first saw the truck as it came from behind the trees. We quote part of Clymer's testimony:

"A  Well, he came out from behind the trees and, oh, I would say about 25 feet from the crossing. It looked like he slowed just a little, and I thought he was going to stop, but he didn't, he pulled up on the crossing.

\*    \*    \*    \*    \*    \*

"A  When he came out from behind the trees I started to call the attention of the engineer to the fact that there was a truck coming and he was looking at it, at the truck, and when he slowed, and then after, when he was about, oh, I guess he was about, oh, I don't know, some six, eight, maybe ten feet off the crossing I saw that, it finally registered on me that he wasn't going to stop so I hollered at the engineer that he was going to try to make it and the engineer already had his hand on the brake, at the same time that I hollered, well, he was watching him too, and we both decided about the same time that he was going to try to make it and he pulled the brake around and made a brake application on the train.

\*    \*    \*    \*    \*    \*

"Q  (By Mr. Gracey) Mr. Clymer, will you tell the jury whether or not that truck ever stopped as it approached this crossing?

"A  No, it never stopped.

"Q  Did it slow down some after you first saw him?

"A  Yes, it slowed down just a little bit.

"Q  Was he going at a speed where he could have stopped if he had ever tried?

"A  I thought so.

"Q  Will you tell the jury what you were doing about the time just prior to the impact occurring?

"A  I was trying to figure some way out.

"Q  Can you tell the jury whether at the time you approached this crossing, when you first realized that there was a possibility that the man might not stop, tell the jury what that engineer was doing from there on in?

"A  At the time that it was apparent that he was not going to stop?

"Q  Yes, sir.

"A  He was blowing the whistle and making brake application.

"Q  Was the headlight going?

"A  Yes, sir.

"Q  Was the engineer watching the truck driver?

"A  Yes, sir."

There is also evidence in the record that the train could not have been stopped or even appreciably slowed down within the distance separating the train and the cross-

ing at the time the truck first became visible from the train.

The burden of proof, or rather the "burden of persuasion", to use Professor Hodges' phrase,[1] (footnote) was on appellants. There was ample evidence to support the jury's answer to Special Issue No. 3. Certainly we cannot say that there was no evidence to support the answer. Appellants' first point is overruled.

In their second point on appeal appellants complain of the court's refusal to submit Special Issues Nos. 10, 10–A and 10–B which inquired (10) whether Railroad failed to have a signal light burning at the intersection; (10–A) if so, whether such failure was negligence, and (10–B) a proximate cause of the collision.

We see no error in the court's refusal to submit the issues. The road along which appellants' truck was traveling extended south of the railroad tracks about 600 yards to appellants' gravel pit, where it came to a dead end. It extended north from the tracks about a half mile to Pipe Line Road. It was a dirt road with a little gravel on it here and there, a one lane road providing for the passage of only one vehicle at a time. Apparently the road did not even have a name. About 100 feet south of the tracks the road was barred by a gate with a chain and four locks. Across the gate was a sign: "No Trespassing." The gate was locked all night and during the day when appellants were not working the pit. Appellants' witness Robert West, County Surveyor of Dallas County, testified that the road had not been dedicated. There is testimony that the road had been provided for the convenience of the Davis Estate which lay a short distance to the south of the tracks.

■■ No issue was requested and none was submitted inquiring whether the crossing was extra-hazardous, that is, whether it was by its nature one that could not be used with safety unless extraordinary means were used, such as mechanical devices or the presence of a flagman, to protect travelers passing the intersection. We need not pass on the question whether it would have been the duty of the court to submit such an issue if it had been requested. In the light of the evidence we cannot say as a matter of law that it was an extra-hazardous crossing. In the absence of such finding there is missing the basic fact upon which the duty to furnish a mechanical warning or a flagman must be conditioned. Attebery v. Henwood, Tex.Civ.App., 177 S.W.2d 95 and authorities there cited. Appellants' second point is overruled.

■ In their third point appellants contend that the court erred in refusing to submit Special Issues Nos. 11, 12, 13, 14 and 15. These issues submit the various elements which go to make up discovered peril.

We find no testimony in the record which would warrant the submission of the issues in question. As we have already said William Dedmon, appellants' driver, himself testified that he was driving so slowly that he could have stopped within two or three feet. This testimony of Dedmon's and the undisputed physical facts and surrounding circumstances tend to corroborate Railroad's engineer and fireman when they testified that, though they saw the truck when it came from behind the trees, it was moving only at a speed of about ten miles per hour and they did not realize that the driver did not intend to stop. It was not until he was within about ten feet of the crossing that they realized he would not stop, then they did not have time to avoid the collision by stopping the train. As we have already stated there is also testimony that the train could not have been stopped within the distance which separated the train and the crossing when the truck was first sighted as it came from behind the trees about 100 feet from the crossing. All of the testimony negatives the theory of discovered peril in this case. None of the testimony supports it. Appellants' third point is overruled.

1. Hodges' "Special Issue Submission in Texas", Secs. 28, 30.

■ Appellants' fourth point asserts error on the ground that there is insufficient evidence to support the jury's finding in answer to Special Issue No. 8–A that the dirt road crossing the tracks was not a public road. In our discussion of appellants' second point we described the road as pictured by the testimony and exhibits. There was sufficient evidence to support the jury's finding. The point is overruled.

■ In their fifth point appellants contend that there is no evidence and there is insufficient evidence to support the jury's answer to Special Issue No. 5 to the effect that the engineer did not fail to exercise ordinary care in not sooner applying the brakes on said train; and that said finding was the result of bias in favor of Railroad.

We see no merit in this point. We refer to the evidence heretofore mentioned in our discussion of other points. The evidence amply supports the jury's answer to Special Issue No. 5. Appellants' fifth point is overruled.

■ In their sixth point appellants make similar claims in regard to the jury's answer to Special Issue No. 1 in which the jury found that the engineer was not operating the train at an excessive rate of speed.

The speed limit on the track in question is 80 miles per hour as set by the Interstate Commerce Commission. The testimony is that the train was traveling at a speed of about 70 miles per hour. According to the engineer, the normal speed of trains at this point is about 75 miles per hour. On the occasion in question the train was running at a speed below normal. The collision occurred about 9:30 o'clock in the morning on August 13, 1960. It was a clear day. The crossing is located at a somewhat secluded spot. Appellants' sixth point is overruled.

In their seventh and last point appellants say that the court should have sustained their motion for judgment non obstante veredicto. As we have pointed out there was ample evidence to support the challenged answers of the jury. Appellants' seventh point is overruled.

The judgment of the trial court is affirmed.